JOHN L. GREEN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

In civil suits, generally, presumptive evidence as distinguished from direct evidence of marriage is *prima facie* sufficient, as when a man and woman cohabit together, and speak of each other as husband and wife, and of the circumstances of their marriage, and the like, but in suits where criminal conversation, adultery, polygamy, &c., constitute the essence or foundation of the action, a more rigid rule is required. In such case presemptions do not apply, and in order to convict the defendant the marriage must be proven.

Writ of Error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion.

*S. D. McConnell* and *Miller & Spencer* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court :

In April, 1884, at a regular term of the Circuit Court held in Marion county, the plaintiff in error, John L. Green, was indicted for polygamy. Such indictment charges that on the 16th day December, 1866, in the county of Marion, John L. Green was married to one Emeline, that on the 28th day of February, 1884, he married one Lizzie Givens, Emeline, his former wife, being then alive, and said Green never having been legally divorced from the said Emeline. The defendant pleaded not guilty. Was tried and found guilty. The defendant's counsel then made a motion for a new trial upon several grounds, among others "because there was no evidence that the defendant was

ever married to Emeline." The court overruled this mo-
tion and the defendant duly excepted to such judgment and
brought his writ of error to this court. The evidence as
appearing in the record before us is as follows: D. S. Du-
frees testified: " I know the defendant, a colored man, he
came to Florida in 1867. He was then living with Eme-
line as his wife, a colored woman. He. lived with her as
man and wife and continued so to live until the —— day
——, 1884, when he was married to [Lizzie Givens. Eme-
line is still living. I only know he came from South Caro-
lina with her and raised a family of children by her. I
also know that she had one child, a mulatto, born before
he lived with her. He always treated Emeline and held
her out as his wife."

To this evidence defendant's counsel objected as being in-
sufficient to prove the marriage.

The court overruled the objection and defendant ex-
cepted. Samuel H. Owens then testified: " I know the
defendant. Knew him before he came to Florida. He
was a slave and also Emeline. They were living together
in 1855. He came to Florida in 1867, and since he came
here he has lived with Emeline as his wife. He lived with
her in South Carolina before he came here and she had several
children by him. She had one child, a mulatto, before he
lived with her. I don't know whether the father of the
child is living or not."

W. A. Wilkinson testified: "I am an ordained minister
of the Gospel. I performed the marriage ceremony between
John L. Green and Lizzie Givens on the —— day of ——,
1884."

The defendant offered no witnesses, and the foregoing is
all the evidence in the case.

Our statute (McClellan's Dig., 375, sec. 4,) provides that
" whoever having a former husband or wife living marries

another person or continues to cohabit with such second husband or wife in this State shall," &c., be deemed guilty of polygamy and be punished, &c. By section 7, chap. 149, McClellan's Digest, page 753, chap. 1552, Laws 1866, it is provided that "in all cases where colored persons have resided and lived together as husband and wife, and have before the world recognized each other as husband and wife, they shall be deemed and taken to be husband and wife as fully and lawfully as if the marriage had been solemnized by a proper officer legally authorized to do and perform the same, and all children born of such parents are hereby legitimized and made heirs of their parents and capable of inheriting under the laws of this State, as though he, she or they had been born in lawful wedlock."

This statute in no way changes the rule to be applied in this action for polygamy. These parties came into this State subsequent to the passage of that law. At common law cohabitation and repute were always adequate in questions of legitimacy, and such proof would be sufficient in most civil actions. In a criminal case, however, presumptions do not apply. In cases of polygamy it has always been held that in order to convict the defendant, the marriage must be proven by evidence other than of cohabitation and repute. In the case of Burns vs. Burns, 13 Fla., 369, this court having this question of the sufficiency of the proof of marriage before them say in the head note: "In civil writs, generally, presumptive evidence, as distinguished from direct evidence of marriage, is *prima facie* sufficient, as where a man and woman have cohabited together, speaking habitually to and of each other as husband and wife, and of the time and circumstances of their marriage, and the like; but in suits where criminal conversation, adultery, &c., constitute the essence or foundation of the action, a more rigid rule is required." In the opinion

in the same case the court cite and approve from Bishop on Marriage and Divorce, the following: " When parties are living together as husband and wife, the legal presumption, favoring innocence, is that they are persons married to one another, and not persons living in the violation of morality, and decency, and law. But when the issue to be decided in the case is such as to show that the one against whom it is decided had violated morality, and decency, and law, if the other party were married to a third person, then no presumption of such marriage can arise simply from cohabitation as husband and wife. In prosecutions for criminal conversation, and upon an indictment for adultery, there must be direct evidence of the marriage, in distinction from presumptive evidence." Such positive evidence is equally necessary upon an indictment for polygamy in order to a conviction. 1 Bishop on Marriage and Divorce, §§441, 442, &c. ; Brown vs. State, 52 Ala., 338 ; Case vs. Case, 17 Cal., 598 ; Clayton vs. Wardell, 5 Barb., 214 ; 2 Wharton's Criminal Law, §1696 ; Chamberlain vs. Chamberlain, 71 N. Y., 423 ; Clayton vs. Wardell, 4 Comstock, 230.

In this case there is not the semblance of evidence that the defendant was married to Emeline, and consequently that he was guilty as charged in the indictment.

The judgment is reversed and a new trial awarded.