MACK MOBLEY, PLAINTIFF IN ERROR, VS. THE STATE
OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Evidence—Admissibility of Indirect, Collateral or
Circumstantial—Proof of Marriage.

1. "Great latitude is to be allowed in the reception of indirect, or
circumstantial evidence. It includes all evidence of an indirect
nature, whether the inferences afforded by it be drawn from
prior experience, or be a deduction of reason from the cir-
cumstances of the particular case, or of reason aided by ex-
perience. The competency of a collateral fact to be used as the
basis of legitimate argument, is not to be determined by the
conclusiveness of the inferences it may afford in reference to
the litigated fact. It is enough if these may tend, even in a
slight degree, to elucidate the inquiry, or to assist, though
remotely, to a determination probably founded in truth."

2. "The proof of marriage, as of other issues, is either by direct
evidence establishing the fact, or by evidence of collateral
facts and circumstances from which its existence may be in-
ferred. Evidence of the former kind, or what is equivalent to
it, is required upon the trial of indictments for polygamy and
adultery, and in actions for criminal conversation; it being
necessary, in such cases, to prove a marriage valid in all re-
spects, but in all other cases any satisfactory evidence in suffi-
cient. General conduct is admissible to prove the fact of the
marriage of the parties in ordinary cases."

3. When the verdict convicts of murder in the second degree,
Chapter 4392, act of 1895, forbids any interference with it on
the ground that it is not supported by the evidence, if the
proofs were sufficient to sustain a higher degree of the crime,
even though such proofs do not in terms make out a case of
murder in the second degree as defined by the statute.

Writ of error to the Circuit Court for Suwannee
county.

The facts in the case are stated in the opinion of the
court.

*J. B. Johnson,* for Plaintiff in Error.

*The Attorney General,* for Defendant in Error.

TAYLOR, C. J.:

The plaintiff in error was indicted and tried for murder in the first degree, and convicted and sentenced for murder in the second degree at the Spring term, 1899, of the Circuit Court of Suwannee county, and takes writ of error.

At the trial one L. T. Boatright, a witness for the State, testified that on the night the deceased was killed the defendant came to his store and stated that he was the man that did the cutting of the woman killed, and that he wanted to give himself up to the sheriff, and that he wanted some one to go down there with him for protection. The witness stated that he then searched him and found a bottle of laudanum in his pocket, and a package of something in his shoe that he (defendant) claimed to be rough on rats. The witness was here shown a bottle and package and asked if they were the packages he took from the defendant the night of the homicide; he replied that he didn't know, but that they looked like them. Then the witness stated that he didn't know whether rough on rats was a deadly poison or not, but that it was said to be. He then stated that laudanum was a deadly poison. To this testimony in reference to the poisonous character of rough on rats and laudanum the defendant objected on the grounds that it was irrelevant, as the allegation in the indictment was that the killing was done by cutting or stabbing, and not with poison; and because the State had not shown any animus on the part of the prisoner towards the deceased, and had proven no threats made by defendant towards the deceased; and because it would have a tendency to blacken the defendant's character and prejudice the minds of the jury. The court overruled the objection, upon the ground that the State

might prove threats further on, to which ruling the defendant excepted.

After the State had rested its case the defendant's counsel moved the court to withdraw from the jury all the testimony as to the bottle of laudanum and rough on rats or deadly poisons, on the grounds that said testimony was not pertinent to the issue, and is in support of and explains no part of the allegations in the indictment, and because it had a tendency to confuse and prejudice the minds of the jury against the prisoner; and because there had been no evidence of threats by the accused against the deceased, or evidence that the prisoner and the deceased were not on the best of terms; and because the indictment alleged the killing to have been with a knife or sharp instrument, and not with poison; but the judge overruled the motion, to which ruling the defendant excepted. These rulings are assigned and urged as error.

In applying the test of relevancy to the questioned evidence, all the facts and circumstances in proof should be considered. There was proof tending to establish the following facts: The defendant was a married man, but, for about two months prior to the homicide, had been living in illicit intercourse with the deceased. He went to the house of deceased at about supper time, knocked on the door, and upon the deceased opening the door and turning to walk back into the house defendant immediately stabbed her in the right side and back of the neck, inflicting the mortal wound, and then proceeded immediately to stab a man who was there alone with the deceased, and upon this man shooting at him with a pistol the defendant ran off, but stopped at the house of another party living not far away and took a cup of coffee, giving to the parties at whose house

he stopped the above statement as to the circumstances of the homicide. That he then went to the place of business of another witness and stated that he had cut the woman, and that he desired the witness to go with him for protection to give himself up to the sheriff. This witness thereupon searched him and found upon his person the bottle of laudanum and the package of rough on rats, the latter being wrapped in a paper and concealed in the defendant's shoe. The proof further showed that the defendant had procured the laudanum and a box of rough on rats the same day of, and only a short while before, the homicide.

The rule with reference to the admissibility of indirect, collateral or circumstantial evidence is that "great latitude is to be allowed in the reception of indirect, or circumstantial evidence. It includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or be a deduction of reason from the circumstances of the particular case, or of reason aided by experience. The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." Stevenson v. Stewart, 11 Pa. St. 307; Kernan v. State, 65 Md. 253, 4 Atl. Rep. 124; Bolling v. State, 54 Ark. 588, 16 S. W. Rep. 658; State v. Rider, 95 Mo. 474, 8 S. W. Rep. 723. Applying this rule as the test of the admissibility of the questioned evidence, and coupling such evidence with the manner in which the homicide was shown to have been committed, and with the fact that only a short while before its commis-

sion the defendant procured the poisonous articles, and went with them to the deceased's house at about the supper hour, but found her having company; and with the fact that the rough on rats was found concealed in his shoe shortly after, though remote, it tended to show premeditated intent upon the defendant's part to take the life of the deceased, and that he went to her house on that fatal night prepared to take such life in more ways than one, and was, therefore, admissible.

Ed. Ivey, a witness for the State, testified that the defendant had been keeping company with the deceased for about two months, and that the defendant was a married man; that he was not married to the deceased; that his wife's name was Nellie Wiggs; that he thought the defendant and Nellie Wiggs were married in Suwannee county; that they lived together as man and wife, and passed as man and wife to the people that knew them. The defendant objected to this evidence of defendant's marriage, and asked. that it be withdrawn from the jury on the following grounds: because it was irrelevant and tends to prejudice the minds of the jury against the defendant, and because the best evidence of defendant's marriage would be the records. The court overruled the objection, to which exception was taken, and this ruling is assigned as error. There was no error here. The proofs showed that the defendant had been "keeping company" with the deceased for about two months; that he was not married to the deceased; that on the night of the homicide he went to the deceased's house and found her there alone with another man, and that he at once stabbed the deceased, dealing her a mortal blow, and also stabbed the man found there with her. The proof that the deceased was not his wife, and the incidental fact that he was mar-

40

ried to another woman were pertinent facts tending to show that the defendant was living illicitly with the deceased, and on finding another man alone with her at night, slew the deceased and stabbed her companion from motives of jealousy. The objection that the proof of marriage must be by the record thereof is without merit. Greenleaf, in his work on evidence, vol. 2, §§461, 462, lays down the following rule: "The proof of marriage, as of other issues is either by direct evidence establishing the fact, or by evidence of collateral facts and circumstances from which its existence may be inferred. Evidence of the former kind, or what is equivalent to it, is required upon the trial of indictments for polygamy and adultery, and in actions of criminal conversation; it being necessary, in such cases, to prove a marriage valid in all respects, * * * but in all other cases any other satisfactory evidence is sufficient." Green v. State, 21 Fla. 403. The same author (vol. 1, §107,) says that general conduct is admissible to prove the fact of the marriage of the parties in ordinary cases.

It is next contended that the verdict of murder in the second degree is not supported by the evidence. While the evidence does not in terms make out a case of murder in the second degree, as defined by the statute, yet we think there is abundant proof to have sustained a verdict for murder in the first degree, had it been found by the jury, and this, under Chapter 4392, act of 1895, forbids any interference with it on our part on the ground that it is not supported by the evidence. McCoy v. State, 40 Fla. 494, 24 South. Rep. 485.

The other assignments of error are abandoned.

Finding no error, the judgment of the court below is affirmed.