GENERAL PROPERTIES CORPORATION v. R. H. GORE, as Trustee for R. H. GORE COMPANY, an Illinois corporation.

14 So. (2nd) 411                                     June Term, 1943
June 29, 1943                                              En Banc

*Chancey & Chancey,* for appellant.
*Kennedy & Kennedy,* for appellee.

CHAPMAN, J.:

The evidence of the parties, in the case at bar, adduced in support of defendant's second and third amended pleas to plaintiff's amended declaration, was submitted to a jury, in the Circuit Court of Broward County, Florida, under instructions by the trial court, resulting in a verdict and judgment for the plaintiff below. An appeal therefrom has been perfected to this Court. The amended declaration appears in our former opinion. See Gore v. General Properties Corporation, 149 Fla. 690, 6 So. (2nd) 837. The second plea denied certain allegations of the amended declaration to the effect that at the time of the ensealing and delivery of said deed the real estate described was subject to any inchoate right of dower; while the amended third plea denied allegations of the amended declaration to the effect that Concepcion Fernandez Loud was ever the wife of Wilmer A. Loud.

The record discloses that Wilmer A. Loud by warranty deeds conveyed Lots 15, 16, 17, 18 and 19 of Block 30 of the Town of Fort Lauderdale, as per map . . . and these two deeds described Wilmer A. Loud as single. The title to these lots by mesne conveyances ultimately rested in R. H. Gore, trustee plaintiff, and by warranty deed conveyed to plaintiff by General Properties Corporation, the appellant here.

Suit to quiet title against the alleged claims and interest, if any, of Wilmer A. Loud and wife, Concepcion Fernandez

Loud, and their alleged daughter, Cecile Loud, was instituted in the Circuit Court of Broward County, Florida, and on October 10, 1939, the Honorable George W. Tedder, Circuit Judge, entered a final decree, and pertinent language therein is viz:

"The evidence in the case shows that R. H. Gore purchased this property relying on the truthfulness of the acknowledgment to the deeds of the defendant, Loud. The evidence further shows that Gore did not know until some time during the month of December, 1938, that Loud had ever been married. Upon ascertaining this fact, plaintiff's attorneys consulted Loud and he freely admitted that he had one time been married and was the father of a daughter. Loud stated that he separated from his wife more than forty years ago in Brownsville, Texas, and had never heard from her since that time, although he had made a search many years ago. The plaintiff testified that he had recently caused an extensive search to be conducted in the Republic of Mexico, and had been unable to find any trace of Mrs. Loud or her daughter. He also stated that he was in possession of the property at the present time. With these facts in view, the Court is of the opinion that the prayers of the bill of complaint should be granted and the Court after having considered the bill of complaint, the answer of Charles H. Crim, as Guardian ad Litem of the absent and unknown defendants, and the answer of Norman C. Abbott, as Administrator ad Litem of the estate of Wilmer A. Loud, and having considered the evidence offered herein by the plaintiff; the defendant, Rosina Casselli, through her attorney, and the Guardian ad Litem and the Administrator ad Litem having announced to the Court that they had no evidence to offer, and the Court being fully advised in the premises, . . .

"It Is Further Ordered, Adjudged and Decreed, that the defendants, the heirs, devisees, legatees and legal representatives of Wilmer A. Loud, deceased, and Concepcion Fernandez Loud, his wife; Cecile Loud, if alive, and if dead all persons claiming any interest in or to the lands hereinafter described under, by or through Cecile Loud, whether as heirs, devisees, legatees, grantees, or otherwise; John Doe, husband of Cecile

Loud, whose name is unknown, if alive, and if dead all persons claiming any interest in or to the lands hereinafter described under, by or through John Doe, husband of Cecile Loud, whose name is unknown, whether as heirs, devisees, legatees, grantees or otherwise; Rosina Casselli, a single woman, as the sole heir of Rosina V. Casselli, deceased, and all other unknown persons claiming any interest under, by or through Rosina V. Casselli, deceased, whether as heirs, devisees, legatees, grantees or otherwise, and to all persons having or claiming to have any interest in or to the following described lands: . . . and each of them as well·as all other person or persons, natural or artificial claiming or asserting any interest in the above described lands, since the institution of this suit, be and they are hereby forever barred and perpetually enjoined from asserting any right, title, claim· or interest in or to the above described lands, against or hostile to the owner in fee simple,· his successors or assigns."

The exhibits appearing in the case at bar disclose that Wilmer A. Loud was made a party to the suit to quiet title and entered an appearance. Service on his wife, Concepcion Fernandez Loud, and alleged daughter, Cecile Loud, was had by publication. Subsequent to the institution of this suit and prior to ·the entry of the final decree in the suit to quiet title, Wilmer A. Loud died at the approximate age of 83 years.

William F. Maurer, a practitioner of the Fort Lauderdale bar, testified that he represented the Presbyterian Church and examined the title to the land and in this connection interviewed Wilmer A. Loud prior to his death. Attorney C. E. Farrington had approved conveyances of land by Loud, as a single man, and after learning of the marriage contacted him for the details of the marriage. Likewise, Louis F. Maire, Assistant State Attorney, caused a subpoena to be served on Wilmer A. Loud, who appeared before him, was sworn and testified about his marriage. These witnesses were sworn and testified, over the objection of the appellant (defendant below) as to their several conversations with Wilmer A. Loud. It was shown that Loud was dead when they testified.

A brief resume of their evidence is to the effect that Wilmer A. Loud was an American and a native of Boston,

Mass. Approximately forty years prior to the time, he accepted employment and traveled over considerable portions of the United States with a show or circus, rendering public performances before audiences, both in the United States and old Mexico. The grace and charm of American women, with all the glamor of youth, failed to induce him to march through the Church doors to an altar. Likewise romance lost its attractiveness when visits for matrimonial purposes were suggested, but a year spent with his circus at Jalopa, Old Mexico, materially altered his viewpoint. It was here that he met a senorita, his senior, the daughter of a banker and a member of a prominent Mexican family. They were married and a daughter was born. They returned to his old home in the vicinity of Boston, Massachusetts.

Her ideals, habits and customs were quite different from those of her husband and his family. She could not put aside the habits and customs of youth acquired around Jalopa. She did all within her power but failed and she longed for her native land. The affection of her husband for the show or circus truly was his first love. He went with it to England, while she returned to her people and her native city. Letters did not pass between them. A diligent search by Loud in later years for his wife and child proved fruitless. Counsel and other independent agencies joined in the search over a considerable period of time, but without favorable results. Loud testified that a divorce had never been entered between them. He proffered to obtain a divorce and execute another deed to the property for the sum of $3,000.00 which offer was not accepted.

The trial court admitted into evidence for the consideration of the jury those portions of the final decree in the suit to quiet title made relevant and material by the allegation of the amended declaration and the pleas of the defendnt. It was the view of the trial court that the relevant and material issues established by the final decree in the suit to quiet title were: (1) the marriage existing between the original grantor, Wilmer A. Loud, and his wife Concepcion Fernandez Loud, and the latter's inchoate right of dower: (2) counsel fees, court costs, witness fees, and other items of cost law-

fully assessed, if shown to be reasonable and just, were recoverable under our former ruling (See Gore v. General Properties Corporation, *supra*), and the decree was evidence of the removal of the inchoate right of dower of Concepcion Fernandez Loud, and attorneys called as witnesses could examine these files and give evidence as to a reasonable attorney's fee.

Statements of Wilmer A. Loud, prior to his death, about his marriage, the birth of a child, and having never obtained a divorce, made to attorneys Maurer, Farrington and Maire, *supra,* were objected to as being inadmissible for all purposes.

The admission into evidence of the court files in the suit to quiet title and statements as to marriage and the existence of a wife and child made by Loud to the attorneys *supra,* coupled with certain instructions given to the jury by the trial court, it is contended, constitutes reversible error. The charges are viz:

"I. The Court charges you that if a marriage relation is once shown to exist it will be presumed to continue in the absence of evidence of its dissolution by death or by divorce.

"II. The Court further charges you that a marriage may be proven by persons to whom a party to a marriage has admitted or otherwise declared that the marriage existed.

"V. The Court further charges you that if a man while married acquires real estate that his wife, whether they be living together or not, acquires an inchoate dower right in the real estate that he so acquires; and that the only way this inchoate dower right can be extinguished in the real estate is by release of either the husband or the wife from one another.

"VII. The Court further charges you that once a marriage is shown to exist it is presumed to exist until death, or divorce are proven to terminate its existence; and that the presumption of the existence of the marriage is not overcome by an presumption of death, but must be actually proven to show the termination of the existence of the marriage.

"VIII. The Court further charges you that if you find from the evidence in this case that the real estate described in the declaration was incumbered by an inchoate right of dower of one Concepcion Fernandez Loud, wife of Wilmer

A. Loud, who transferred this property in the chain of title as a single man when he was in fact married at the time of such transfer, and had never been divorced, then under the covenant of the deed against incumbrances, given by General Properties Corporation, a Florida corporation, defendant, in this case, to R. H. Gore, predecessor in title to R. H. Gore, as Trustee, of the R. H. Gore Company, an Illinois corporation, plaintiff, in the case, that the plaintiff is entitled to recover from the defendant a reasonable attorney's fee, costs and expenses put to in clearing the title to the real estate described in the declaration in this cause."

Counsel for appellant point out that the General Properties Corporation was not made a party to the suit to quiet title and therefore the terms and conditions of the final decree rendered therein were not binding on it under the applicable rules of *res adjudicata,* and many authorities are cited to sustain the view. The pleadings in the case at bar fail to disclose the issue of *res adjudicata.* We have held that in order to make a matter *res adjudicata* there must be a concurrence of: (1) identity on the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quantity for or against whom the claim is made. See Gray v. Gray, 91 Fla. 103, 107 So. 261. The final decree was admitted in evidence by the trial court, not for the purpose of showing that the appellant was bound by it, but only for the consideration of the jury on the question of marriage between Wilmer A. Loud and Concepcion Fernandez Loud. See Sections 92.05, 92.10, and 92.19, Fla. Stats. 1941.

It is clear under a number of Florida decisions that Loud could have testified about his marriage with Concepcion Fernandez Loud but death rendered it impossible. Previous admissions of Loud about the marriage with Concepcion Fernandez Loud were testified to by the attorneys. It is contended that the admission of this testimony constitutes reversible error. The case of Green v. State, 21 Fla. 403, 58 Am. Rep. 670, involved the sufficiency of the evidence to establish marriage in a criminal case. Cohabitation was established but it was not conclusive evidence of marriage. The rule enunciated in

Green. v. State, supra, was reaffirmed and elaborated upon by this Court in Mobley v. State, 41 Fla. 621, 26 So. 732, when we said:

"The objection that the proof of marriage must be by the record thereof is without merit. Greenleaf, in his work on evidence, Vol. 2, pars. 461, 462, lays down the following rule. 'The proof of marriage, as of other issues is either by direct evidence establishing the fact, or by evidence of collateral facts and circumstances from which its existence may be inferred. Evidence of the former kind, or what is equivalent to it, is required upon the trial of indictments for polygamy and adultery, and in actions of criminal conversation; it being necessary, in such cases to prove a marriage valid in all respects, . . . but in all other cases any other satisfactory evidence is sufficient.' Green v. State, 21 Fla. 403. The same author (vol. 1, par. 107) says that general conduct is admissible to prove the fact of the marriage of the parties in ordinary cases."

We have held that a party to a divorce action may testify about the marriage and the rule in criminal cases cited *supra* requires the establishement of a valid marriage and contemplates quantum of proof beyond a reasonable doubt, but in civil suits by a preponderance of the evidence. The admissions made by Loud to the attorneys were not conclusive but for the jury with other testimony on the issues made. 38 C.J. 1336, par. 109, provides that if a party to an alleged marriage has admitted or otherwise declared that the marriage exists, the admission or declaration may be used as evidence of the marriage.

The controlling rule in civil suits as to proof of marriage is stated in 18 R.C.L. 424-5, par. 51, viz:

"51. Declarations and Admissions Generally.—In civil suits, the declarations and admissions of the husband or wife are generally admissible to prove their marriage. They are admissible, not as hearsay evidence, but as being original evidence of facts from which the marriage may be inferred. They are part of the res gestae, and as such admissible. They must be made, however, during the continuance of the cohabitation of the parties, for if not so. made, they are not

considered contemporaneous with the main fact to be proved, so as to render them admissible as part of the res gestae. A letter containing admissions written by one spouse to another may, however, be inadmissible on the ground that it contains a confidential communication which cannot be read without the consent of both parties. Under some circumstances the declarations of a deceased member of a family that the parents of such family were never married are admissible in evidence whether his connection with the family was by blood or marriage."

Schouler on Marriage and Divorce, Vol. 2 (6th ed.) 1467-8, par. 1226, holds that admissions of marriage by either or both parties are admissible in evidence, in civil suits to establish marriage and is recognized as strong evidence of marriage but while the same may be sufficient in civil suits it may be insufficient in criminal suits charging adultery, bigamy or criminal conversation.

Weigmore on Evidence, Vol. IV (3rd Ed.) 16-17, par. 1055, states the rule as to admission of marriage for use as evidence by a party in civil suits thusly:

"Admissions, as Insufficient for Proof of Certain Facts; (1) Marriage; (2) Divorce; (3) Criminal Cases.—In proving certain kinds of facts, a few rules have grown up which do not forbid the use of the party's admissions, but merely declare them insufficient without additional evidence; these are rules of Quantity, not of Admissibility: . . .

"(5) There is no fixed rule that in *civil cases generally* an opponent's extra-judicial admission is insufficient, without other evidence, as the foundation of a verdict for one or more facts. But when the admission concerns the main controverted fact in the case, and the opponent's admission is the only evidence offered, a few Courts show an inclination to follow a general maxim that it is insufficient,—at least, when the admission is one of conduct only. This is of course merely an application of the general function of the judge to control a verdict based on insufficient evidence . . ."

20 Am. Jur. 415 par. 473, provides:

"Marriage.—Declarations and general repute are admissible as proof of a marriage. Reputation of marriage, unlike

that of matters of pedigree generally, may proceed from persons who are not members of the family. The reason for the distinction is the public interest which is taken in the question of the existence of a marital relation. There is authority to the effect that where a formal marriage is proved, repute is not admissible to establish that there was no marriage."

See 35 Am. Jur. 319-20, par. 213; Jewell v. Jewell, 14 U.S. 578, 11 L. Ed. 108; Miles v. United States, 103 U.S. 304, 26 L. Ed. 481; Lindsey v. Jefferson, 68 Okla. 156, 172 Pac. 641.

The challenged instructions as given by the trial court to the jury on the issue of marriage simply follow the issues made by the pleadings and the law of evidence as to marriage in civil cases. In our former opinion in the case at bar, we held, that the measure of damages recoverable for the breach of the covenants against encumbrances in the warranty deed given by General Properties Corporation to the plaintiff was the amount paid on the costs necessarily incurred by the plaintiff in removing the encumbrance, provided said amount of costs was reasonable. It cannot be questioned that counsel fees incurred by plaintiff in obtaining a decree in the suit to quiet title against the inchoate right of dower of Concepcion Fernandez Loud was the controlling factor of damages. Attorneys testifying in the trial court as to the amount of such a fee necessarily would examine the court files. The challenged instructions, when considered in the light of the entire charge to the jury, appear reasonably free from error.

The motion for a new trial, among other things, contends that the testimony is legally insufficient to sustain a verdict for the plaintiff. We hold the testimony presented questions of fact within the province of a jury to settle under appropriate instructions. We hesitate to interfere with the conclusions of the jury on the issues of fact submitted. We fail to find error in the record.

Affirmed.

BUFORD, C. J., and TERRELL, J., concur.

BROWN, J., concurs, specially.

THOMAS and SEBRING, JJ., agree to conclusion.

ADAMS, J., dissents.

BROWN, J., concurring specially:

I concur in the conclusion and in most of the opinion, but I think the decree in the suit to a quiet title involved the question of Loud's marriage—and that the decree on that issue was a decree *in rem* binding on the world, and that while the testimony admitted in this case as to what Loud had stated to the witnesses was unnecessary and perhaps irrelevant, its admission was harmless error.

THOMAS, J., concurs.