## LINSEY v. JEFFERSON.

No. 8289—Opinion Filed Feb. 12, 1918.

Rehearing Denied May 7, 1918.

(172 Pac. 641.)

(Syllabus.)

1. **Marriage — Evidence — Acknowledgment.**

Repeated acknowledgments by a man, since deceased, of his marriage with a certain woman constitute direct evidence of marriage.

2. **Same — Circumstantial Evidence — Presumption.**

Marriage may be proven by circumstantial evidence, and since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited together as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect.

3. **Same — Reputation and Cohabitation — Evidence — Burden of Proof.**

In an action in ejectment the right of the plaintiff to recover depended upon whether she was the legitimate offspring of W. and A., and this question, in turn, depended upon whether a certain relation shown to exist between W. and A. was matrimonial or meretricious. To support the issues in her behalf, the plaintiff introduced in evidence certain declarations of many friends and relatives of the respective families to the effect that W. and A. openly lived and cohabited together as husband and wife for more than a year prior to the birth of the plaintiff, holding each other out and treating each other as such by repeated acknowledgments that they were husband and wife; and that accordingly W. and A. were generally reputed to be husband and wife among their relatives and acquaintances and those who came in contact with them. Held, that this evidence, W. and A. being deceased, was competent for the purpose of showing a valid marriage between them, and sufficient to require the party asserting its invalidity to take the burden of proving it.

4. **Reversal of Judgment—Technical Errors.**

Section 6005, Rev. Laws 1910, provides: "No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

5. **Appeal and Error—Miscarriage of Justice—Violation of Constitutional and Statutory Right.**

Record examined, and held, that it does not appear that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of any constitutional or statutory right.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by Senora Jefferson, by Chas. F. Bliss, her next friend, against Lilah D. Linsey. Judgment for plaintiff, and defendant brings error. Affirmed.

James H. Sykes and E. G. Wilson, for plaintiff in error.

Davidson & Williams, for defendant in error.

KANE, J. This was an action, commenced by Senora Jefferson, by Chas. F. Bliss, her next friend, for the purpose of recovering possession of and quieting the title to a cer-

tain, tract of land situated in Tulsa county. Upon trial to a jury there was a verdict for the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

Upon trial the only question of fact involved was whether Senora Jefferson was the legitimate child of Walter Jefferson, and that question turns upon whether Walter Jefferson and Annie Jefferson, nee Starr, admittedly the father and mother of the plaintiff, were husband and wife at the date of her birth. Senora claims the land in controversy by descent from her grandfather, Chesley Starr, the father of Annie Jefferson, nee Starr, and it is conceded that she is entitled to it if the relation between her father and mother was correctly found to be matrimonial, and not meretricious, by the trial court. Chesley Starr, the grandfather, Annie Starr, his daughter, Walter Jefferson, and Senora Jefferson are all Creek Indians of the full blood; and the contention of the plaintiff in, error, as we understand it, is that, inasmuch as the evidence introduced at the trial for the purpose of establishing a valid marriage between Walter Jefferson and Annie Starr tended only to show that they were married, if at all, according to the tribal customs of the Creek Indians subsequent to the abrogation of such tribal custom marriages by the enactment of the Creek Marriage Laws, which prohibited tribal custom marriages, and required ceremonial marriages among the Creek Tribe of Indians, it was not sufficient to support the verdict and judgment rendered in favor of the plaintiff. The record probably warrants the inference that the trial court was of the opinion that the evidence adduced at the trial tended only to establish a marriage between Walter Jefferson and Annie Starr according to the custom and usage of the Creek Tribe of Indians, and that such a marriage was valid. But, even if the trial court was in error as to this and submitted the plaintiff's cause to the jury upon an erroneous theory, more unfavorable to her than a correct theory upon which she was entitled to recover, it would be no ground for the reversal of the judgment rendered in her favor. The evidence offered by the plaintiff for the purpose of establishing her legitimacy tended to show that about a year prior to her birth her father and mother, both since deceased, commenced to live together as husband and wife at the home of her maternal grandfather, Chesley Starr; that after this relation commenced until the time of the death of her mother, which occurred at the birth of Senora, both Walter Jefferson and Annie Jefferson recognized and treated each other

as husband and wife, by declarations and admissions to that effect, and so they were considered by their friends, relatives, and neighbors, that upon the death of Annie Jefferson, Walter, who was present, took the child, Senora, to live with his parents, where she continued to reside, always bearing the name of Senora Jefferson and always being recognized by Walter Jefferson, his family and friends as the legitimate child of Walter and Annie Jefferson. That Walter Jefferson caused Senora to be enrolled as his daughter on the Creek Rolls and in connection therewith made two affidavits at different times in which he stated under oath that he was the husband of Annie Jefferson, deceased, and that Senora was the fruit of this union. At the same time and in the same connection an affidavit was also made and filed by Lena Jefferson, a midwife, the mother of Walter, and grandmother of Senora, wherein she stated under oath that she attended Mrs. Annie Jefferson, wife of Walter Jefferson, as midwife, at the birth of the child Senora, that said child is now living and is named Senora Jefferson. Much more testimony of the same import was introduced, but this is sufficient for the purposes of this opinion.

If at the time in question a legal marriage, whether ceremonial or otherwise, could have been consummated between Walter and Annie Jefferson, this evidence, which is practically uncontradicted, was competent for the purpose of proving such marriage. It is well settled that repeated acknowledgments by a man, since deceased, of his marriage with a certain woman, are direct evidence of marriage. Coleman v. James, Ex'r, et al., 67 Okla. —, 169 Pac. 1064; In re Comly's Estate, 185 Pa. 208, 39 Atl. 890; 8 Enc. Ev. 475.

Of course, the value of declarations of the parties concerning marriages must always depend upon the circumstances under which they were made, but when, as here, there were not only repeated oral acknowledgments of the status by both parties, but also declarations to that effect made by the man under oath in circumstances of greatest deliberation, such declarations, as we have seen, are entitled to great weight. 8 Enc. Ev. 476; Greenawalt v. McEnelly, 85 Pa. 352.

It is also well settled that marriage may be proven by circumstantial evidence, and that since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited together as husband and wife for a considerable length of time, holding each other

out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect.

Therefore, in the case at bar, as we have seen, the verdict of the jury and judgment entered thereon by the trial court is not only supported by circumstantial · evidence, but also by direct evidence consisting of the repeated acknowledgments of both parties and acknowledgments by the man made in the most solemn and formal manner possible. Now, in making these acknowledgments of marriage we do not understand that Walter Jefferson, or Annie Jefferson, stated to any one that they were joined together by the ceremonial marriage required by the Creek marriage laws, or according to the Creek custom and usage governing marriages in the Creek Nation prior to the enactment of such laws, or according to the common law, or any other form of marriage. They merely acknowledged that they were husband and wife, as the man did in the affidavits filed before the Dawes Commission, as follows:

"I am the lawful husband of Annie Jefferson, who is a citizen by blood of the Creek Nation; that a female child was born to me on the 31st day of July, 1903; that said ·child has been named Senora Jefferson, and is now living."

These acknowledgments and the other evidence adverted to, which is practically uncontradicted, being competent to prove a valid marriage between Walter Jefferson and Annie Starr, the manner of its solemnization is unimportant. The plaintiff having produced both direct and circumstantial evidence tending ·to show a valid marriage between her father and mother, the law requires the party who asserts its illegality to take the burden of proving it. Chancey v. Whinnery, 47 Okla. 272, 147 Pac. 1036; Crickett v. Hardin, 60 Okla. 57, 159 Pac. 277.

In our judgment. the defendant herein has completely failed to sustain this burden. Upon the whole record we are satisfied the judgment rendered is in accord with right and justice. Section 6005, Rev. Laws Okla. 1910, provides that:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury. or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure. unless, in the opinion of the court to which application is made after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

After a careful examination of the entire, record, it does not appear that ·the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of any constitutional or statutory provision.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.