## SANDLIN v. TIGER.

No. 10143—Opinion Filed Nov. 12, 1924.

**1. Marriage—Proof—Presumption from Cohabitation and Reputation.**

Marriage may be proven by circumstantial evidence, and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited together as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them. may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect.

**2. Same—Common-Law Marriage of Indians—Validity.**

After the laws of Arkansas were extended in force in the Indian Territory so as to apply to all persons therein, marriages among members of Indian Tribes in accordance with the common law are valid.

**3. Same—Change from Illicit to Marriage Relation.**

Illicit intercourse during courtship does not, as a matter of law, incapacitate the par-

ties from afterwards assuming marriage relations, and where it is shown that the parties afterwards cohabited together in good faith and held themselves out as husband and wife, the presumption obtains in harmony with the general policy of the law to promote and encourage good morals that the parties had reformed, and the change from illicit to matrimonial relations may occur, although the occasion or precise time of the change has not been clearly ascertained.

**4. Appeal and Error—Harmless Error—Statute.**

Section 6005, Revised Laws 1910, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

**5. Indians—Devolution of Creek Estate—Noncitizen Heirs—Oklahoma Statute.**

The devolution of an estate of a deceased Creek allottee, having died since the admission of Oklahoma into the Union, is governed by the laws of descent and distribution of the state of Oklahoma and noncitizen heirs may inherit.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action by Barney Tiger, a minor, by his legal guardian, Robert McRay, against William A. Sandlin, et al. to recover possession and to quiet title to real estate. Judgment for plaintiff, and defendant appealed. Affirmed in part.

Ralph Welch, Kirk B. Turner, Martin E. Turner, and William A. Collier, for plaintiff in error.

Clark Nichols and H. B. Reubelt, for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of McIntosh county, Okla., on the 17th day of March, 1917, by defendant in error, Barney Tiger, by his legal guardian, Robert McRay, plaintiff below, against the plaintiff in error, William A. Sandlin, defendant below, to quiet title to certain lands described in the petition, for the possession thereof, and for damages for the wrongful detention thereof.

The parties will be hereinafter referred to as they appeared in the court below.

In his second amended petition the plaintiff alleged that the land in controversy constituted the homestead allotment of one Amos Tiger, a full-blood Creek Indian, duly enrolled as such, opposite roll number 7945, of the approved rolls of the Five Civilized Tribes of Indians who had died intestate on the 31st of December, 1909, and claimed the title and right of possession to said lands as the sole surviving issue of a valid common law marriage, contracted by the deceased allottee, Amos Tiger, and Lena Tiger, nee Pigeon, by which he inherited said land in fee simple.

The defendant claimed title through a deed executed on the 28th day of March, 1910, by Salina Powell, a surviving sister of the deceased allottee, Amos Tiger, and Charles W. Powell, her husband, joined in by the said Lena Tiger, nee Pigeon, to B. O. Sims, who were alleged to be the only heirs at law of the said Amos Tiger.

By subsequent conveyances, the defendant claimed title to all of said land and filed an answer in which he asked that the title be quieted in him. A jury was waived and on the 26th day of February, 1918, the cause was tried to the court, which rendered a general judgment and finding in favor of the plaintiff upon all issues involved and quieted the title of the plaintiff in said land against the claim of the defendant.

From the judgment so rendered, the defendant appeals to this court assigning several errors. It is contended that the finding of the trial court to the effect that Amos Tiger, in his lifetime, was lawfully married to Lena Tiger, nee Pigeon, and that plaintiff was the lawful issue of said marriage, born during lawful wedlock, is not supported by the evidence, and that the trial court erred in refusing to set the judgment aside and grant the defendant a new trial. With this contention we can not agree.

The conclusion of the trial court is supported, we think, by the testimony of various witnesses, many of whom were neighbors and associates of Amos Tiger and Lena Pigeon, to the effect that they lived together as husband and wife and held themselves out as such to the public for a number of years and were so recognized in the community where they resided. While the exact date on which they commenced matrimonial relations does not clearly appear in the evidence, the conduct of the parties and holding themselves out as husband and wife for a number of years during which time a child, Tache,

was born, concerning whose legitimacy no serious question had ever been raised, and the conduct of the public generally are sufficient, we think, to raise the presumption that a common law marriage contract had been entered into within the rule of law laid down in the case of Reeves v. Reeves, 15 Okla. 240, 82 Pac. 490, Lindsay v. Jefferson, 68 Okla. 156, 172 Pac. 641, and other Oklahoma cases recognizing the validity of common law marriages. In addition to these circumstances clearly established by the great preponderance of the evidence there is testimony in the record that Lena and Amos expressly assumed matrimonial relations toward each other after which they continued the relation of husband and wife.

It is seriously contended by the defendant in his brief that the uncontroverted evidence showed that the relation assumed by Amos and Lena was meretricious and not matrimonial, and the admission of Lena that she had illicit intercourse with Amos during their courtship is relied upon to establish that the relation of the parties was immoral in his inception and could not ripen into a valid marriage.

Upon a review of the authorities and especially after reviewing the case of White v. White, 82 Cal. 427, cited and relied upon by the defendant, we do not think that illicit intercourse during courtship incapacitates the parties from afterwards assuming marriage relations, and where it is shown that the parties afterwards cohabited together in good faith and held themselves out as husband and wife the presumption would obtain, we think, in harmony with the general policy of the law to promote and encourage good morals, that the parties had reformed, and that the change of relation assumed by the parties in attempting to live together in good faith as husband and wife sufficient to rebut the presumption of adulterous intent evidenced by illicit intercourse during courtship. As was said by the Supreme Court of California in the case of White v. White, supra:

"The state of illicit intercourse is presumed to continue until the evidence shows that the intercourse of the parties has become matrimonial. * * * No greater change than that above indicated is required. There are some expressions in the opinions in the cases of Cunningham v. Cunningham and Lapsley v. Grierson which seem to go further, but on a particular examination of the above cases it is manifest that the court that decided those cases did not intend to hold that in the case where the intercourse in its inception was illicit that that circumstance prevented the establishment of the marriage status by the subsequent conduct of the parties. showing a general undivided and uniform habit and repute that they had interchanged the requisite matrimonial consent. * * * It should be stated here that a change from illicit to licit or matrimonial relations may occur and be satisfactorily established although the precise time or occasion can not be clearly ascertained."

Applying the rule of the above case to the facts in the instant case we are of the opinion that proof of illicit intercourse during courtship is insufficient to establish that the subsequent relation maintained by the parties was not matrimonial. It is next contended by the defendant, conceding a common law marriage was entered into by Amos Tiger and Lena Pigeon, that said marriage was not a valid marriage because neither the laws of the Creek Nation nor the laws of the state of Arkansas, in force in the Indian Territory at the time the alleged marriage in question was contracted, recognized a common law marriage as a lawful marriage, and he cites the case of Furth v. Furth, 97 Ark. 272, 25 American and English Annotated Cases, 595 (decided January 16, 1911), where the Supreme Court of Arkansas held:

"The subject of marriage as it exists in Arkansas is entirely regulated by the statute which requires a ceremonial marriage before a magistrate or regularly ordained clergyman and the rule that the so-called marriage per verba de praesenti or per verba de futuro cum cupola constitutes a valid marriage between the parties has never been adopted as part of the Arkansas law."

It is stated in the body of the opinion in the Furth Case that the question of whether or not, under the Arkansas marriage statute, a common law marriage could exist had been an open question in the state of Arkansas, and that the Arkansas court had not passed upon the question until the rule in the Furth Case holding invalid a common law marriage in Arkansas, was announced.

Our own Supreme Court, in the early case of Clarkson v. Washington 38 Okla. 4, 131 Pac. 935, put an interpretation on the decisions of the Arkansas courts, construing the Arkansas marriage statute at variance with the holding in the later case of Furth v. Furth, supra, basing its decision upon Jones v. Jones, 28 Ark. 19, when extended over the Indian Territory and made applicable to all persons therein, made common law marriages contracted in the Indian Territory valid marriages, and this holding has been followed in numerous subsequent cases, among which the following may be mentioned. Oklahoma Land Com-

pany v. Thomas, 34 Okla. 681, 127 Pac. 8; Butler v. Wilson, 54 Okla. 229, 153 Pac. 823; James v. Adams, 56 Okla. 450, 155 Pac. 1121; Linsey v. Jefferson, 68 Okla. 156, 172 Pac. 641; Chancey v. Whinery, 47 Okla. 272, **147 Pac. 1036;** Sealey v. Smith, 81 Okla. 97, 197 Pac. 490. In the last mentioned case our court, speaking. through Mr. Justice Kennamer, said:

"After the laws of Arkansas were extended in force in the Indian Territory so as to apply to all persons, common law marriages have been recognized as valid."

While it is perhaps true that the rule announced in the Furth Case, supra, announces the rule of the Arkansas court on the question of the validity of a common law marriage in Arkansas, prior to statehood, it is plain to be seen that our own court in a long line of decisions has placed a different interpretation upon the holdings of the Arkansas Court construing the Arkansas marriage statute in relation to the validity of common law marriages, than found expression in the later case of Furth v. Furth. supra, and this interpretation, however erroneous it may have been. has come to be recognized in the courts of Oklahoma as a rule of property.

Numerous transfers of property based upon this interpretation had occurred prior to the holding in the Furth Case, and to overturn this interpretation at this late day would in our judgment only serve to unsettle titles and bastardize the issue of many Creek Indian marriages, heretofore regarded as legitmate.

Recognizing the importance of the security of land titles in Oklahoma we are constrained that we should not at this late day deviate from the interpretation, placed upon the Arkansas law by our own court in the long line of decisions referred to.

It is next urged by the defendant that though a valid common law marriage may have existed between Amos and Lena the finding of the trial court that Amos Tiger was the parent of the plaintiff, Barney Tiger is not supported by the evidence. There is testimony to the effect that on August 31, 1908, Amos Tiger entered into a valid ceremonial marriage with a white woman by the name of Mida Worley. There is testimony in the record to the effect that Barney Tiger was born long prior to this date and during the period of actual cohabitation between Amos and Lena, and some two years prior to their separation.

The testimony of the mother, supported by the testimony of neighbors and acquaint-ances, most of whom fix the birth of Barney long prior to the separation of Amos and Lena, no doubt led the trial court to adopt a view with respect to parentage of Barney in keeping with his legitimacy. Much of the testimony in record opposed to this view was indirect and circumstantial by white witnesses, whose opportunity for knowing of the facts concerning the parentage of this **Indian boy** could not have been equal to those who testified to his birth during wedlock. It is not surprising that the trial court in this situation should have adopted a view of the testimony that would prevent bastardizing the plaintiff.

The exact date of the birth of Barney is not shown by the direct testimony of any witness; some fix it as early as 1905, and some as late as 1909. If he was born in 1905 or 1906 his birth would occur in wedlock. If he was born in 1909 he would probably be illegitimate. In these circumstances the presumption in favor of legitimacy will prevail.

We think the finding of the trial court that Barney was born in wedlock is supported by the weight of the evidence. If the plaintiff was born in lawful wedlock it follows that neither parent will be permitted to deny the legitimacy of their offspring. Bell v. Territory, 8 Okla. 75. 56 Pac. 853. And the alleged statements of Amos and Lena, in the years 1909 and 1910, denying the paternity of Amos cannot be received.

It is next contended that the trial court erred in refusing to permit the defendant to introduce in evidence certified copies of birth affidavits, executed by the mother, Lena Tiger,, and the grandmother, Matie Pigeon, at the time of the enrollment of Tache Tiger, containing statements that Lena Tiger was not the lawful wife of Amos Tiger, and cites Johnson et al. v. Perry, 54 Okla. 23. 153 Pac. 289, and other cases in support of his contention. The originals of these affidavits were not offered in evidence. or accounted for in any manner, nor was any offer made to show that they were in fact executed by the alleged affiants. and in our judgment the mere introduction in the evidence of a certified copy of a writing, purporting to have been signed by witnesses 16 or 18 years prior to the date of the trial without proof by those present at the execution thereof of the actual execution of the affidavits. though admissible in evidence, would have little probative value as impeaching evidence or otherwise.

Upon a survey of the entire record we do

**not** think that the exclusion of these affidavits amounts to such a violation o. a constitutional or statutory right on the part of the defendant as to justify a reversal. Lindsey v. Jefferson, 68 Okla 156, 172 Pac. 641. It is finally contended that the action of the trial court in finding that Mida Tiger. the white noncitizen wife of Amos Tiger, deceased, was not entitled to inherit any part of his estate was error, and that for this reason the case should be reversed with direction to enter judgment for the defendant. We think the trial court did so err.

In the case of Robert Pigeon's Estate 81 Okla. 180, 198 Pac. 309, it was held as follows:

"That the devolution of an estate of a deceased Creek allottee having died since the admission of Oklahoma into the Union is governed by the laws of descent and distribution of the state of Oklahoma and noncitizen heirs may inherit."

We do not agree with the defendant, however, that the case should be reversed with directions to enter judgment in favor of the defendant. There is no controversy between the parties that Amos Tiger was survived by his lawful noncitizen wife. Mida Tiger, but she was not made a party to this action in the trial court.

It is the opinion of this court that the legitimacy of the plaintiff, and his right to inherit one-half of the land in controversy has been established and judgment of the court insofar as it affects the one-half undivided interest in the land is correct and as thus modified the judgment should be affirmed.

By the Court: It is so ordered.