RIDGEWAY et al. v. LOGAN et al.

No. 34433.   Jan. 8, 1952.

239 P. 2d 778.

604

Murphy & Firestone, Kingfisher, for plaintiffs in error.

Adams & Adams, Guthrie, for defendants in error.

PER CURIAM. John W. Logan departed this life, intestate, while a resident of Logan county, Oklahoma, April 5, 1948. Mary J. Logan, who claims to be the widow of John W. Logan, deceased, was appointed administratrix, but waived her right to act and requested the court to appoint H. A. Adams as administrator. On December 17, 1948, the administrator filed his final report, petition for determination of heirship and for distribution of the estate of John W. Logan, deceased, naming as heirs at law, Mary J. Logan, widow, and Daisy June Logan, a minor daughter. Before the final hearing on petition, the protestants and plaintiffs in error filed written objections to the final report, petition for determination of heirship and for distribution in the county court on the grounds that Mary J. Logan was not the common-law widow, and Daisy June Logan, a minor, was not the daughter of John W. Logan, deceased, setting forth that the protestants were the legal heirs of the deceased, being the brothers and sister, niece and nephew of John W. Logan, deceased.

The cause was tried in the county court on March 22, 1949, the issues being found in favor of the common-law widow and the legitimatized minor daughter of said deceased. Distribution was ordered one-half to the widow and one-half to the daughter. An appeal was then taken to the district court of Logan county, where the decision of the county court on the trial de novo was upheld. Motion for new trial was filed by protestants and overruled. Thereafter, an appeal was perfected to this court.

The facts are that both John W. Logan and Mary J. Logan had been previously married. John W. Logan's first wife died, intestate, March 29, 1929, without children, leaving heirs at law. Mary J. Logan had been married to Arthur Vermillion, who departed this life in 1930, and they had three children. Two of these children were witnesses in this case. John W. Logan and Mary J. Vermillion became acquainted in 1932, at the time John W. Logan was living with his mother in Guthrie, Oklahoma, and Mary J. Vermillion was living with her sister and three children on a 50-acre tract of land near Guthrie, purchased out of the life insurance of her first husband, Arthur Vermillion. John W. Logan was introduced to Mary J. Vermillion by his mother, and became a frequent visitor at the farm home of Mary. He kept company with her in 1932, 1933, 1934, and 1935. Daisy June was born on August 4, 1935, on the farm of her mother. Her birth certificate is dated June 26, 1937, was introduced in evidence and gives the name of John W. Logan as her father and Mary Vermillion, as her mother, the certificate being signed by a midwife. The answer to the question "Legitimate?" appear-

ing on the certificate is "No." In 1935 or 1936 John W. Logan left his mother's residence and moved to the 80-acre homestead where he continued to reside until he died. He continued to visit his illegitimate daughter from time to time. The evidence shows that in March, 1938, John W. Logan took Mary J. Vermillion and the daughter to the homestead. That because of poor living quarters he then took them back to Mary's farm. In April, 1938, he again took them to his homestead where they remained for six weeks with him. Mary helped him with the crops and then they returned to her farm. In July or August he again went after Mary and the child and returned them to his homestead where they remained permanently. Daisy June was then three years old, and slept with her parents in the same bed. There is striking evidence in the record to show that Mary J. Logan helped with the crops, chopped cotton, picked cotton, helped stack the wheat and shock the corn. Her neighbors knew her by the name of Logan, and called her daughter by the name of Daisy June Logan. The record shows that Daisy June Logan attended school at Star District No. 12, which was her first year of school, later transferred to Big 4 School, which she attended in 1941, 1942, 1943, 1944, 1945 and 1946. In 1947 she went to school at Prairie Grove. There is evidence in the record that sugar ration books which were issued in 1942 reflect the following: Exhibit No. 9 is for his wife, Mary Logan, and the relationship reflected by his signature is "John Wesley Logan, husband." On No. 10, the relationship indicated is "John Wesley Logan, father." Daisy June's age is given as six years; height, 3 ft. 10 in., weight 48 lbs. These were ration books used by the Logan family to get sugar during World War II, and were found among the papers of the deceased after his death. Copies of joint income tax returns for the years 1944 and 1945 were introduced in evidence, and reflect that they were signed by John W. Logan and Mary J. Logan, as hus-

band and wife, and that Daisy June is listed as a dependent. These returns were genuine and signed before the Deputy Collector of the Internal Revenue Department.

There was other written evidence introduced which we feel was properly admitted in the record and which leads to the conclusion that John W. Logan held himself out as the husband of Mary J. Logan. There is positive evidence in the case that on October 5, 1943, John W. Logan and Mary J. Logan, husband and wife, executed an oil and gas lease on one of his 80-acre farms, and acknowledged before a notary public that he and Mary J. Logan were husband and wife. On January 31, 1944, he leased the other 80 acres of his land and again caused the instrument to be executed by John W. Logan and Mary J. Logan as husband and wife. This latter instrument was duly acknowledged before a notary public.

Medical evidence was introduced with reference to previous illness and disease suffered by John W. Logan. The apparent purpose of such evidence was to fortify the contention that John W. Logan had a high and uncontrollable temper. We do not comment on the testimony of the doctors, since we do not feel that the question of common-law marriage in this case is either strengthened or weakened by such evidence. The scholastic enumerations of Daisy June Logan, each signed in the presence of the official school enumerator as witness, carries great weight. The various documents produced reflect that John W. Logan unequivocally and unquestionably acknowledged his paternity and fatherhood of his daughter, Daisy June Logan, who was born out of wedlock. The evidence produced also shows that John W. Logan legally adopted Daisy June Logan under the provisions of Title 10, O. S. 1941 §55. There is also ample evidence in the record to show a common-law marriage between John W. Logan and Mary J. Logan; that the protestants

are not heirs of the deceased, and have no interest in the estate of John W. Logan, deceased.

It thus appears that the decisive question presented for determination is whether the finding of the trial court that there was a valid common-law marriage between Mary J. Logan and John W. Logan was sufficiently sustained by the evidence. We think such finding was not against the clear weight of the evidence, but, on the contrary, was sustained by the clear weight of the evidence, independent of the testimony of each of the defendants in error.

In the case of Vann v. Vann, 186 Okla. 42, 96 P. 2d 76, the first and second paragraphs of the syllabus by the court are as follows:

"In order to constitute a valid 'common-law marriage,' it is necessary that there should be an actual and mutual agreement to enter into the matrimonial relation, permanent and exclusive of all others, between parties capable of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties.

"Where there is direct evidence of the existence of a common-law marriage, such as the declaration or admissions of the party against whose interests the declarations or admissions would be, and evidence of cohabitation as man and wife, or evidence of the mutual assumption openly of the marital duties and obligations, it is unnecessary to go further and prove reputation of the marital status."

Attorneys for the plaintiffs in error discussed, at great length, the construction to be placed upon 12 O. S. 1941 §384. The statute in question does not specifically name common-law wife, but does use the specific language "heir at law." Having once established through other competent evidence that Mary J. Logan was the common-law wife of John W. Logan, it is urged that the statute in question would apply to her. However, this court has held in Re Giordano's Estate, Mueller v. Giordano, 197 Okla. 693, 174 P. 2d 236, that 12 O. S. 1941 §384, sometimes referred to as the "dead man's statute," does not apply where there was other evidence in the record admitted without objection, which tended to establish the same fact, to wit, that the parties were common-law husband and wife. We see no reason for further comment on the so-called "dead man's statute," because an examination of the record reveals the correctness of the opinion of the lower court that there was other evidence sufficient to establish the common-law contract. In the case at bar, it was not even necessary to rely upon circumstantial inference or evidence, the record being so completely poignant with direct evidence.

The evidence to prove the existence of the common-law marriage here asserted has been referred to in the statement of facts above given. It is significant to note that in the case of Red Eagle v. Cannon, 201 Okla. 511, 208 P. 2d 557, this court held:

"Deeds executed by a man and woman at a time when they are living together and cohabiting, which deeds recite that such man and woman are husband and wife, and are acknowledged by each, are solemn admissions or declarations of the fact that they are husband and wife, and constitute direct evidence that they are married at that time."

It would certainly seem that there is very little difference between the deed such as was recognized as a sufficient instrument in the Red Eagle case and the oil and gas leases which were introduced in evidence as solemn admissions or declarations in this case as evidence of the fact that John W. Logan and Mary J. Logan were husband and wife. To the same general effect as the Red Eagle case is Coleman v. James, 67 Okla. 112, 169 P. 1064, which is cited with approval in Linsey v. Jefferson, 68 Okla. 156, 172 P. 641, and Vann v. Vann, supra.

In the case of Jones v. Snyder, 121 Okla. 254, 249 P. 313, this court held:

"Where the father of an illegitimate child takes such child into his own home, cares for and provides for such child, and treats it as his own, and by his acts and conduct manifests acknowledgment that such child is his, such acts and conduct are sufficient compliance with the statute to legitimize such child, whether or not the father in so many words publicly proclaims such child as his."

The case now before the court presents an even stronger state of facts and strengthens the heretofore announced decision of this court. The record in this case presents direct words of proclamation by John W. Logan that Daisy June Logan was his offspring. This court has also held that the word "adopts" in this section means "legitimates." Allison v. Bryan, 26 Okla. 520, 109 P. 934, 138 Am. St. Rep. 988, 30 L. R. A., N.S., 146. Citing Allison v. Bryan, 21 Okla. 557, 97 P. 282, 18 L.R.A., N. S., 931, 17 Ann. Cas. 468.

We do not deem it necessary to dwell at length upon the contentions of the plaintiffs in error with reference to the interpretation or application of 84 O.S. 1941 §215, which provides for inheritance by an illegitimate child. We believe that the matter has been adequately settled in the case of In re Chew's Estate, Cox v. Chew, 200 Okla. 317, 193 P. 2d 572, the syllabus by the court being as follows:

"Where a child is born of a relationship prohibited by statute, and inherits property from his mother at her death, and his father thereafter publicly acknowledges paternity and maintains the relationship of parent and child, the child is legitimated for all purposes, and upon death of such child, intestate, and without issue, the father succeeds to the estate of such child."

The voluminous evidence contained in the case-made has been carefully reviewed, and we do not deem it necessary to discuss and pass on each and every argument set forth in the briefs, which have been ably written by respective counsel.

It is clear that the trial court carefully weighed the evidence before it and applied the applicable law to the facts. This court has heretofore held many times that in an action of equitable cognizance, the presumption is in favor of the finding of the trial court, and it will not be set aside unless the same is against the clear weight of the evidence; and where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general judgment. Barry v. Hubbard, 195 Okla. 112, 155 P. 2d 512. See, also, Hill v. Hill, 202 Okla. 483, 215 P. 2d 553. For other cases dealing with the same subject see Wilkerson v. Walker, 196 Okla. 618, 167 P. 2d 372; Noble v. Bodovitz, 175 Okla. 432, 52 P. 2d 1046; and Brown v. Investors Service Co., 182 Okla. 270, 77 P. 2d 566.

It would be an unnecessary prolonging of this opinion to review in detail the contention of the respective parties with reference to the testimony of the witnesses produced by each party.

The record in this case presents a wife, who, as stated in the beginning of this opinion, taken from the record, helped with the crops, chopped cotton, picked cotton, helped stack the wheat and shock the corn, and at the same time provided the deceased with a home. She bore John W. Logan a daughter, whom he publicly proclaimed through school records and other evidence as his offspring. It would truly be a miscarriage of justice to do other than affirm the judgment of the lower court in this case.

Affirmed.

This court acknowledges the services of Attorneys David R. Milsten, Joe B. Houston, and Joseph A. Gill, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judi-

cial Council, and appointed by the Court.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.