Isaac TOWER, Cherokee Full Blood, Roll No. 26188, Also Known as Isaac Towie, Plaintiff in Error,

v.

Samuel TOWIE et al., Defendants in Error.

No. 39143.

Supreme Court of Oklahoma.

Dec. 27, 1961.

Rehearing Denied Jan. 30, 1962.

Forrester Brewster, Muskogee, Ralph B. Brainard, Claremore, for plaintiff in error.

Andew Wilcoxen, Muskogee, for defendants in error.

JOHNSON, Justice.

This action was filed in the District Court of Muskogee County, Oklahoma, by plaintiff in error Isaac Tower, also known as Isaac Towie, Cherokee fullblood, in which he sought to quiet title to eighty acres of land located in Section 14, T 11 N, R 20 E. The defendants were the known and unknown heirs of Wilson Towie, a Cherokee fullblood. The parties will hereafter be referred to as they appeared in the trial court.

The petition alleged that Wilson Towie died the owner of such tract; that he died intestate, his will having been denied probate. It was then alleged that plaintiff was the son and only heir of Wilson Towie. The Oklahoma Tax Commission and the Area Director were also made parties defendant but are not concerned in this appeal.

The defendants for their answer denied generally the allegations of plaintiff's petition and specifically denied possession of plaintiff and that Wilson Towie was the father of plaintiff. The answer admitted that defendants claimed an ownership of the property as the only heirs and devisees of Wilson Towie. The defendants filed a cross-petition in which they sought a determination of heirship and the quieting of title in defendants. They also contended that a petition for probate of the will of Wilson Towie was offered for probate in the County Court of Cherokee County, Oklahoma; that a hearing was had on the application to probate said will, but that the record failed to show what disposition was made or judgment entered; that defendants were unable to advise the court what disposition was made of the matter.

In reply to defendants' answer and cross-petition plaintiff denied generally the allegations thereof and alleged that the probate appeal had been dismissed and was finally terminated.

In connection with this last issue concerning the probate proceeding, no discussion is had in the briefs. We therefore assume that there has been an abandonment of this phase.

As stated by counsel, the sole question for determination is whether Isaac Tower was the legitimate son and sole heir of Wilson Towie, deceased. The following facts stand undisputed:

1. That Wilson Towie, Cherokee Full-blood No. 18527, died intestate in September, 1948, the owner of the land involved in this litigation, and that he was born in 1867.

2. That Isaac Tower, a fullblood Cherokee Indian, was born on June 4, 1888.

3. That the departmental Record on Enrollment of Isaac Tower recited: "The father of this boy seems to be identified as Wilson Towie."

4. Cherokee Census Card No. 9978 states: "Name: Isaac Tower; Name of Father, Wilson Tower; Name of Mother, Nellie Smoke."

A résumé of the oral evidence on behalf of plaintiff is as follows: Ibbie Nelum testified at the enrollment hearing June 4, 1902 before the Department of the Interior Commission to the Five Civilized Tribes that she was 49 years of age at that time, and that she applied for the enrollment of Isaac Tower, who was fourteen years old; that his father was Wilson Tower, still living, and his mother was Nellie Smoke, who died about three years before.

The trial herein was held on March 18, 1960, in which Isaac Tower testified that Ibbie Nelum enrolled him, his mother being dead at that time; that he lived with Mrs. Nelum after his mother's death; that he knew Wilson Towie, who came after him after his mother died; that he hid out to prevent Wilson from taking him. He stated that he was 72 years old; that he did not know whether his father and mother were married; that "they just—they just make up and live together in them days."

A transcript of the testimony of Bertha Howard which was given in the County Court of Cherokee County, Oklahoma, at the hearing of the probate of the will of Wilson Towie April 22, 1949, was admitted and considered. She testified that she knew Wilson Towie; that he and Nellie Smoke lived together for three years; that he sent Nellie money sometimes; that Nellie went by the name of Mrs. Tower and Mrs. Smoke; that Nellie died when the boy was about ten; that she was seventy years of age and remembered the occasion when Wilson came after the boy Isaac.

Further testimony of Bertha Howard was read wherein she testified that the first time she saw Isaac he was about three months old, and that his father and mother were living together.

Nick Thornton, a witness for the defense, testified that he was 53 years of age; that he knew Wilson about thirty years, and that Wilson never mentioned any children, and that he never heard him talk about a woman named Nellie Smoke.

Susie Thompson, another witness for the defendants, testified that Wilson Towie was her uncle; that she was fifty years of age, and that Wilson was not married. She testified that she did not know Nellie.

Defense witness Katie Wacoche testified that she was 43 years old; that she knew Wilson since 1941; that he died in 1948 at the age of 81; that she never heard him mention Nellie Smoke.

The testimony of Jennie Quinton was that she was 48 years old, a niece of Wilson Towie, and that Wilson Towie never mentioned having a son.

Another defense witness, Thomas P. Roach, testified that he was a Cherokee fullblood born in 1879; that he didn't know whether Towie ever married; that they played together as boys and that Wilson was thirteen years older than he. When questioned further as to the difference in their ages he then went on to say he didn't play with Wilson. He finally admitted that he did not know whether Wilson was ever married or ever had a child.

This concluded the evidence. It should be noted that the defense witnesses Nick Thornton, Katie Wacoche and Jennie Quinton were born many years after the time that Wilson and Nellie were living together as husband and wife; hence their evidence has scant probative value. The evidence of Roach was so weakened by his conclusions that it likewise is of little value.

■ This is not a case which requires the finding of a common-law marriage or a ceremonial marriage, either under the laws

of the land or under the tribal laws of the Cherokees. It is a case wherein legal presumption without satisfactory rebuttal establishes a legal marriage.

Here we have the documentary evidence from the enrollment records coupled with positive testimony that Wilson Towie and Nellie Smoke, for a period of years, lived together as husband and wife; that Isaac lived with them as their child. Of course, Isaac had no knowledge concerning whether they were married; hence, his evidence is of little value on that point.

Summarizing the evidence, it shows that Wilson Towie and Nellie Smoke were the parents of plaintiff. It establishes that they lived together as husband and wife at the time Isaac was born. It shows that this residing together continued for some years, and that they were known as Mr. and Mrs. Towie. It establishes that they attended church together, and that after Nellie's death Wilson came to get the boy.

As against this, there is only negative evidence by people who were not even alive at the time of Isaac's birth and childhood. Some emphasis is laid upon the rejected will of Wilson in which he said he had no children. The evidence shows that at the time of making this will all of the directions were given in the Cherokee language and interpreted into English by another. The possibility of mistakes under such circumstances does not give sufficient weight to this to overcome the legal presumptions involved.

In Am.Jur., Vol. 35, page 311, the text reads:

"This presumption of marriage, from a cohabitation apparently matrimonial is one of *the strongest presumptions known to the law, especially where the legitimacy of a child is involved.*" (Emphasis ours.)

█ Enrollment records, while not conclusive of collateral, descriptive matter therein contained, are of great weight and are not overcome except by clear and convincing proof. See Scott v. Beams, 10 Cir., 122 F.2d 777 and 42 C.J.S. Indians,

pg. 644; Cox v. Colbert, 135 Okl. 218, 275 P. 317.

While not involving the precise question involved in the instant case, we think the following language in the opinion of this court in Howell v. Adams, 158 Okl. 239, 13 P.2d 577, 578, to be appropriate to the case at bar:

" 'Such marriage may be proved by circumstantial evidence, and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there be no direct testimony to that effect.' "

█ We consider the case of Suter v. Suter, 68 W.Va. 690, 70 S.E. 705, to be particularly applicable to the case at bar, wherein the second paragraph of the syllabus reads:

"A marriage may be proved by circumstances, reputation, conduct of parties and cohabitation, and a presumption of marriage arising from cohabitation apparently matrimonial, especially where the legitimacy of a child is involved, is so strong that it may be overcome only by cogent proof on the part of him who alleges the illegitimacy."

We therefore hold that the plaintiff, Isaac Tower, Cherokee Roll No. 26188, also known as Isaac Towie, made out a prima facie case as the legitimate son and only heir of Wilson Towie, deceased, and that the evidence for the defense was not sufficiently clear, convincing and cogent to overcome the presumption of a valid marriage.

The cause is therefore reversed with directions to vacate the judgment rendered

for defendants and proceed in a manner not inconsistent with the views herein expressed.

WILLIAMS, C. J., and WELCH, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., and DAVISON, HALLEY and BERRY, JJ., dissent.

HALLEY, Justice (dissenting).

With all due respect to the opinion of the majority in this case I am compelled to dissent. The rule of law laid down in the syllabus is incorrect as applied to couples co-habiting in the Indian Territory prior to 1890.

I cannot agree that the record shows a marriage according to Cherokee law of Nellie Smoke and Wilson Towie.

The purpose of the enrollment records was primarily to determine who were entitled to be enrolled as members of one of the Five Civilized Tribes, here the Cherokee Tribe. The record on Isaac Tower was that "The father of this boy seemed to be identified as Wilson Towie."

The evidence in this case including the enrollment record does not show legitimacy of the plaintiff.

The evidence in this case shows that both before and after the death of plaintiff's mother she was referred to as Nellie Smoke and Mrs. Nellie Smoke.

Although I think there was sufficient evidence by plaintiff to raise the presumption that he was the legitimate son of Wilson Towie, I am of the opinion that the defendants have rebutted this presumption of legitimacy. It became the burden of the plaintiff to show that his father and mother had been married according to Cherokee Tribal Laws. There was no evidence of this.

There was no evidence that Wilson Towie ever recognized the plaintiff as his legitimate child after he is supposed to have done so when the boy was three years of age. He specifically stated in his will that he had no children. The trial judge heard all the testimony and saw the documentary evidence. We think he was correct in finding that the plaintiff did not establish that he was a legitimate child of Wilson Towie. The evidence in this case is too flimsy to establish this fact.

The Cherokee Nation, prior to the time that Mansfield Digest of the Laws of Arkansas was extended over the Five Civilized Tribes by the Act of Congress of 1890, 26 Stat. 81, had laws setting out the formal requirements for marriage of its citizens which were extant in 1888 when plaintiff was born. If there was a tribal custom as to marriage at the time plaintiff was born it was not plead or proved. The common law marriage was not recognized among the Cherokees. I set out the provisions of the Constitution and Laws of the Cherokee Nation of 1875 and 1892:

"Sec. 95. Marriages may be solemnized by any of the judges of the courts of this Nation, or by the clerks of the several districts or by any ordained minister of the Gospel in regular communion with any religious society. Any marriage contracted in writing in the presence of two or more attending witnesses, who shall sign the marriage contract as such shall be lawful.

"Sec. 96. No particular form of marriage shall be required in the solemnization of marriages, except that the parties shall solemnly declare in the presence of the judge, clerk or minister officiating, or the attending witnesses, that they take each other as husband and wife; * * *

"Sec. 97. It shall be the duty of all persons contracting marriage in the presence of witnesses * * * to report the same to the clerk of the district in which such marriage was solemnized, for registration, giving the full names of the contracting parties, their ages and previous places of residence, and the clerk shall at once make record of the same, in a book to be kept for that purpose."

493

In Aldrich v. Hinds et al., 116 Okl. 300, 245 P. 854, we held as follows:

"Prior to the extension of the Arkansas law over the Indian Territory, the common law had no application to marriages between members of any of the Five Civilized Tribes, but all such marriages were regulated by tribal laws and customs, and all such marriages and legitimacy of all children born of such marriages were recognized by Congress by Act May 2, 1890."

This being a case of equitable cognizance and after having read the record in this case and weighed the evidence I am of the opinion that the judgment of the trial court finding for the defendants is not against the clear weight of the evidence.

I dissent.

I am authorized to state that BLACK-BIRD, V. C. J., and BERRY, J., concur in the views expressed herein.