Barbara HODGE, Appellant,

v.

Orel E. CONLEY et al., Respondents.

No. KCD 28206.

Missouri Court of Appeals, Kansas City District.

Nov. 1, 1976.

R. Lynn Myers, St. Joseph, for appellant.

Theodore M. Kranitz, St. Joseph, for respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

By this suit for partition, plaintiff seeks a sale of certain real estate and the distribution to her as a tenant in common of one-fourth of the proceeds. Defendant Orel E. Conley resists on the theory that he is owner of the entire title as the surviving tenant

by the entirety. The trial court, sitting without a jury, found for defendant Orel. Plaintiff appeals.

Title, to the extent here pertinent, originated by a warranty deed from Velva Boyd to Orel Edmund Conley and Ora Elizabeth Conley dated February 3, 1967. That deed designated the grantees Orel and Ora as "husband and wife." That deed was executed and delivered pursuant to a real estate contract dated February 1, 1967, which also designated Orel and Ora as "husband and wife" and was signed by both of them. The purchase price was $15,000, of which $6,000 was financed by a loan from Provident Savings & Loan Association of St. Joseph.

On June 29, 1972, Ora executed a quit claim deed naming herself and two children by an earlier marriage (one of those children being the plaintiff) as joint tenants. That deed which was introduced in evidence by plaintiff recites: "Grantor states that on February 3, 1967, when she and Orel Edmond Conley acquired title to this realty from Velva V. Boyd, they were not yet man and wife, even though their title deed described them as such. They were later married in Miami, Oklahoma on 6/16/67."

Ora died August 1, 1973. At the time of her death the purchase money loan had been paid down to $820.23, which balance was paid by Orel subsequent to Ora's death. Also after her death, the quit claim deed dated June 29, 1972, was filed for record, and it was then that Orel learned of that conveyance for the first time.

Orel testified that he and Ora had gone through two marriage ceremonies, both in Miami, Oklahoma. He stated that the first of those occurred on June 7, 1966. He testified that a document of some sort accompanied that ceremony but "[i]t wasn't a legal certificate." Whatever that document was, it has become lost. Sometime during the course of the next year some question arose as to the legality of the marriage. Orel and Ora discovered that they did not have a legal marriage license, and despite efforts to do so they were unable to find the certificate which they received at the time of the 1966 ceremony. Because "[i]f there was something unlegal about it, that we wanted to make it right," the parties then returned to Miami, Oklahoma, and went through a second ceremony. A certificate of marriage of the second ceremony dated June 16, 1967, was placed in evidence.

Orel further testified that from and after June, 1966, he and Ora lived together as husband and wife. He further testified that at the time of the property purchase in February of 1967, he fully believed that he and Ora were lawfully husband and wife. After the filing of the present lawsuit, Orel went to Miami, Oklahoma, to check with the people who were witnesses to the 1966 marriage or anyone that had anything to do with the marriage, but was not able to locate any of those persons.

Somewhat restated, the points made by plaintiff on this appeal are that the trial court erred (1) in finding that Orel and Ora took title as tenants by the entirety, because they were not legally married at the time of the conveyance to them; (2) in permitting Orel to testify concerning a marriage in 1966, because his testimony was barred by the Dead Man's Statute, § 491.-010, RSMo 1969; and (3) in finding that it would be inequitable to deprive Orel of one-half of the property without first requiring a suit to reform the 1967 deed. The crucial issue presented by these points taken as a whole is whether the trial court properly found that the parties were married when they received the title deed on February 3, 1967. If they were then married, that deed to them from Velva Boyd unquestionably created an estate by the entirety, and Orel is now entitled to the whole. Moreover, if it be true that the parties were legally married in February, 1967, then the alternative ground for decision by the trial court becomes immaterial and plaintiff's third assignment of error drops out of the case.

On the key issue thus defined, as to whether the parties were legally married at the time of the 1967 deed, the following finding by the trial court assumes dominant importance:

"[O]n February 3, 1967, * * * as far as this land was concerned they [Orel E. Conley and Ora Elizabeth Conley] were married, either de facto or by common-law. . . ."

Plaintiff attacks that finding on two grounds: a) that Orel's testimony, upon which the finding rests at least in part, was inadmissible under the Dead Man's Statute; and b) that the finding in question was inconsistent with the court's further finding that "on June 16, 1967, defendant Orel Conley and Ora Elizabeth Conley were married in Miami, Oklahoma."

■ So far as Orel's testimony is concerned, the bar of the Dead Man's Statute was waived by plaintiff's introduction into evidence of the quit claim deed dated June 29, 1972, which contained a statement by the deceased respecting the question of marriage now in issue. *Allen v. Chouteau,* 102 Mo. 309, 14 S.W. 869 (1890); *Galvin v. Knights of Father Mathew,* 169 Mo.App. 496, 155 S.W. 45 (1913).

Furthermore, the court's finding does not stand on Orel's testimony alone. This finding finds strong support in the recital in the 1967 contract for deed which was signed by Orel and which declared that the parties were "husband and wife." Cases holding such declarations to be competent evidence of marriage include *Red Eagle v. Cannon,* 201 Okl. 511, 208 P.2d 557 (1949); *Ridgeway v. Logan,* 205 Okl. 603, 239 P.2d 778 (1952); and *Linsey v. Jefferson,* 68 Okl. 156, 172 P. 641 (1918).

■ Even though Ora later contradicted that declaration by the recital in the 1972 quit claim deed, her confirmation of marriage in the earlier deed is entitled to more weight than her denial in the later deed. *Vann v. Vann,* 186 Okl. 42, 96 P.2d 76, 78 (1939); 55 C.J.S. Marriage § 45, p. 907. Moreover, Ora's declaration of non-marriage in the quit claim deed states merely a layman's legal conclusion which is not necessarily correct. For example, Ora could well have been unfamiliar with the Oklahoma recognition of common law marriage; and it would be too much to assume that she was aware of the subtle difference be-

tween a defect which renders a marriage only voidable rather than wholly void. In the latter respect, see 52 Am.Jur.2d Marriage § 103, p. 954, et seq.

■ With respect to the trial court's finding that the parties were married on June 16, 1967, that finding cannot be taken to conflict with the parties having previously been married prior to February, 1967. It is entirely reasonable and in accordance with experience that parties may desire to remove any question as to a possible defect in their marital status by going through yet another ceremony which would make the matter unimpeachable. 52 Am.Jur.2d Marriage § 57, p. 911; *Adger v. Ackerman,* 115 F. 124 (8th Cir. 1902). The interpretation placed by plaintiff upon this finding must be rejected on the ground that it unnecessarily and unjustifiably attempts to create a conflict in the findings. By fair interpretation, the trial court found that the parties were married prior to February 3, 1967, but that they underwent an additional ceremonial marriage on June 16, 1967.

An element of uncertainty has been introduced in this case by the trial court's reference to the earlier marriage being either "de facto" or by common law. Although the term "de facto" is not of common usage with respect to marriages, the trial court probably had in mind the substantial line of Missouri cases which hold that, despite the outlawing of common law marriages in Missouri by virtue of § 451.-040(5), RSMo 1969, nevertheless a presumption of a ceremonial marriage arises upon a showing of open cohabitation, declaration and conduct by the parties and general reputation, despite inability to show a marriage license or any record of the issuance of one. *Thomson v. Thomson,* 236 Mo.App. 1223, 163 S.W.2d 792 (1942); *Rone's Estate v. Rone,* 218 S.W.2d 138 (Mo.App.1949); *Suddeth v. Hawkins,* 202 S.W.2d 572 (Mo. App.1947); *Hartman v. Valier & Spies Milling Co.,* 356 Mo. 424, 202 S.W.2d 1 (1947); *Smith v. Smith,* 237 S.W.2d 84 (Mo.1951); *In re Estate of Tomlinson,* 493 S.W.2d 402 (Mo.App.1973); Weyrauch, "Informal and Formal Marriage—An Appraisal of Trends

in Family Organization," 28 U.Chi.L.Rev. 88, l. c. 105.

In any event, Oklahoma, where the 1966 marriage occurred and presumably where the parties then lived, recognized at that time and still recognizes common law marriages. *Ridgeway v. Logan, supra*; *Vann v. Vann, supra; Daniels v. Mohon,* 350 P.2d 932 (Okl.1960); *Rath v. Maness,* 470 P.2d 1011 (Okl.1970); *Marshall v. State,* 537 P.2d 423 (Okl.Cr.App.1975). The evidence here is sufficient, especially aided by the strong presumptions in favor of marriage, to support the trial court's finding that a marriage did occur prior to February 3, 1967. With respect to the matter of the presumption of marriage, see *Waddingham v. Waddingham,* 21 Mo.App. 609 (1886), (quoted in *Sanders v. Central Building Materials Co.,* 43 S.W.2d 863 [Mo.App.1931]) where the court held:

> "The presumption of marriage is in favor of the innocence and good morals of the parties concerned. The law, looking upon men and women as moral members of society, will presume that when a man and woman are cohabiting, they are husband and wife, and will not presume they are man and mistress; this is based on the first presumption of morality and innocence."

The same presumption exists in Oklahoma as well as generally. *Tower v. Towie,* 368 P.2d 488 (Okl.1962); *Linsey v. Jefferson, supra*; 52 Am.Jur.2d Marriage § 133, p. 983.

The judgment of the trial court is supported by substantial evidence, it is not against the weight of the evidence and it does not erroneously declare or apply the law. It is therefore entitled to being sustained on appeal. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

Affirmed.

All concur.