BARBER v. BARBER.

No. 32349. May 6, 1947.

*180 P. 2d 658.*

L. M. Colville, of Pawhuska, and Henry R. Duncan, of Oklahoma City, for plaintiff in error.

Carl C. Wever, of Pawhuska, for defendant in error.

ARNOLD, J. Augustus Charles Barber, an Osage allottee, departed this life in Osage county leaving an instrument purporting to be his last will and testament. After the death of August Charles Barber said instrument was presented to the Secretary of the Interior pursuant to the Act of Congress of April 18, 1912, and said instrument was by the Secretary of the Interior disapproved for the reason that the testator married subsequent to its execution. Thereafter, administration proceedings were commenced in the county court of Osage county, and Myrtle Barber, surviving wife of Augustus Charles Barber, was appointed and qualified as administratrix of his estate. At the conclusion of the administration proceedings and when said matter came on for hearing for the determination of the heirs of deceased, no contest was made as to the right of Myrtle Barber, surviving widow, to inherit an undivided one-half interest in and to said estate, but a contest developed over the remaining half of the estate between J. E. Barber, father, on the one side, and Peton Barber Whiteman, an illegitimate child of the deceased, on the other side. The county court adjudged and decreed that Augustus Charles Barber had by the following provision in the instrument purporting to be his last will and testament, but which instrument was disapproved by the Secretary of the Interior, viz.:

"I give and bequeath to my beloved daughter, Peton Barber, the sum of One Dollar ($1.00),"

—acknowledged Peton Barber Whiteman as his child and that by reason thereof said Peton Barber Whiteman

was entitled to and did inherit a one-half interest in the estate of the deceased.

The judgment of the county court was affirmed on appeal.

J. E. Barber and Peton Barber Whiteman will be herein referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

It is apparent from the foregoing statement that the only question to be determined by this court is whether the last will and testament of Augustus Charles Barber is sufficiently clear and explicit to constitute Peton Barber Whiteman an heir to his estate.

The last will and testament, pertinent to the question involved, reads as follows:

'2. I give and bequeath to my beloved daughter, Peton Barber, the sum of One Dollar ($1.00).

"3. I give and bequeath to my beloved brother, Morris G. Barber, the sum of One Dollar ($1.00).

"4. I give and bequeath to my beloved father, J. E. Barber, the sum of One Dollar ($1.00).

"5. I give and bequeath all the rest, residue and remainder of my personal property to my beloved mother, Ida M. Barber.

"6. I give and devise to my beloved mother, Ida M. Barber, all of the rest, residue and remainder of my real property, wherever situated.

"7. I give and bequeath to my beloved mother, Ida M. Barber, my Osage headright, and my right to participate in the funds, properties and assets of the Osage Tribe of Indians.

"8. I hereby appoint and designate my beloved mother, Ida M. Barber, sole executrix, without bond, of this my last will and testament, consisting of two (2) sheets of paper, subscribed my name this 5th day of October, 1935."

Plaintiff and defendant have each cited and quoted from a large number of authorities from other jurisdictions as well as some of our own authorities. Many of the authorities relied on disclose facts essentially different from the facts here involved and such decisions are not considered to be very persuasive in the determination of this cause. For instance, in the case of Lind v. Burke, 56 Neb. 785, 77 N. W. 444, the original instrument relied on as establishing acknowledgment under the statute was not before the court but its purported language was shown by secondary evidence. The same situation existed in the case of Moore v. Flack, 77 Neb. 52, 108 N.W. 143, and the same character of proof was introduced. In both cases the court held the evidence of acknowledgment to be insufficient. The same situation arose in the case of Burns v. Lawson, 188 Okla. 181, 107 P. 2d 555, in which this court held, as did the Nebraska court in the above-cited cases, that the secondary evidence offered to establish the acknowledgment was wholly insufficient.

Because of the great divergence of opinions in other jurisdictions resulting from the peculiar facts presented in the cases relied on by both plaintiff and defendant, we feel that it is better for this court to adhere to its own construction of the statute as applied to facts considered by it, than to look elsewhere for a guide in determining the question here presented.

In the case of Kelly v. Scott, 125 Okla. 208, 257 P. 303, this court held that a last will and testament, even though it was not entitled to probate, was competent evidence to establish an acknowledgment of an illegitimate child by its putative father, if its language satisfies the statute.

In the early case of Holloway v. McCormick, 41 Okla. 1, 136 P. 111, this court considered the sufficiency of a letter written by the putative father to the mother of the alleged illegitimate child. In that case the court held that extrinsic evidence was not admissible but that the acknowledgment must be found within the four corners of the letter itself. We said:

"The court cannot take this writing by its four corners and say it 'directly, unequivocally, and unquestionably' acknowledges that Leonard McCormick is the father of Luther McCormick. Extrinsic evidence is necessary to show that the indefinite, ambiguous, and uncertain phrase, 'my boy', used therein, even refers to Luther McCormick. This writing being the only evidence of the acknowledgment of paternity permitted by the statute, and it being insufficient, it follows that there was no evidence to sustain the finding of the trial court that Luther McCormick was the heir of Leonard McCormick and entitled to an undivided one-half interest in the allotment of Lucinda McCormick. . . ."

In the more recent case of Doty v. Vensel, 190 Okla. 461, 124 P. 2d 982, this court followed the rule announced in the Holloway Case and held that the instrument involved, by reason of certain erasures therein, did not disclose within its four corners an acknowledgment by the putative father of his illegitimate child.

We think these holdings by this court furnish a definite rule to be followed in measuring the sufficiency of the language contained in the last will and testament of Augustus Charles Barber to constitute his illegitimate child an heir to his estate and by that rule thus announced, we will consider the instrument itself.

Upon the trial of the case in the district court, it was stipulated by the parties that Peton Barber Whiteman and Peton Barber are one and the same person, and that the Peton Barber mentioned in the will is the illegitimate child of Augustus Charles Barber. This stipulation eliminates any consideration of the question of paternity and narrows our consideration to the single question of the sufficiency of the language used by decedent in his last will and testament to constitute his child an heir to his estate.

The instrument here involved was signed by the testator and attested by two witnesses as required by law to constitute a valid execution of a will. The applicable language of 84 O.S. 1941 §215 reads:

"Every illegitimate child is the heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child."

After making provision for the payment of his debts and funeral expenses, the testator made four bequests, and it must be noted that the language of each of these four bequests is identical with reference to the family relationship of the testator to the recipients of his bounty. They are "to my beloved daughter, Peton Barber"; "to my beloved brother, Morris G. Barber"; "to my beloved father, J. E. Barber"; and "to my beloved mother, Ida M. Barber". By this identical language in each of the bequests, he places his daughter, Peton Barber, on the same plane of blood relationship with his brother, his father and his mother. We think that this language of the testator clearly indicated a recognition by him that Peton Barber was of his blood just as were the other three named in the subsequent bequests. If there had been no stipulation by the parties on the trial of the cause that Peton Barber referred to in the will was the same person as Peton Barber Whiteman, and that she was the illegitimate daughter of Augustus Charles Barber, the language used by him in the will in its relation to the similar language used by him with reference to his brother, his father, and his mother is sufficient to constitute a direct, unequivocal, and unquestionable recognition of Peton Barber as his child and direct offspring. Not only did the testator by the language of the bequests place Peton Barber on the same plane of blood relationship with his brother and his father, but he gave her equal recognition with each of them in the bequest made to her. Plaintiff calls attention to the fact that the testator gave to Peton Barber one dollar only and argues that this fact indicates that the testator did not intend to recognize blood relationship, but attention is called

to the fact that he had the same intention with reference to his father, the plaintiff herein. This instrument was intended by the testator as a disposition of his property after his death and the only thing which prevented it from having such operation was the fact of his subsequent marriage resulting in its disapproval as a will by the Secretary of the Interior. No more solemn form of recognition of blood relationship to the defendant could have been made by the deceased than by placing her first in the list of blood relatives to whom he made bequests.

We think the will here involved within its four corners furnishes conclusive proof that the testator recognied Peton Barber as his child, and the judgment of the trial court is, therefore, in all things affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and GIBSON, JJ., concur.