PARISH et al. v. NED.

No. 35286.

Supreme Court of Oklahoma.

Dec. 22, 1953.

Gilbert W. Daney, Atoka, and Lee Welch, Antlers, for plaintiffs in error.

Louis A. Fischl, and Ernest W. Tate, Ardmore, for defendant in error.

BLACKBIRD, Justice.

Plaintiffs in error are sons, daughters and a daughter of another deceased daughter of Robert and Eliza Parish, full blood Choctaw Indians, now deceased. After these sons and daughters were born to Eliza she instituted a divorce action against Robert in the District Court of Pittsburg County, in 1925, but did not obtain the divorce until 1927. In the interim she gave birth to a child named Elsie Ned, whose putative father was another Choctaw full

blood Indian named John Ned. When John Ned died he left a will devising his Indian allotment "to my daughter, Elsie Ned" as his only heir. This will was duly probated in Cause No. 2051 of the County Court of Carter County, Oklahoma, and by an instrument denominated "Order Approving Final Report, Determining Heirs and Discharging Administrator", entered in said proceedings November 6, 1930, title to said allotment was vested in the said Elsie Ned. Thereafter, in 1942, the United States Probate Attorney commenced Cause No. 3302, in the same court on behalf of the said Elsie Ned to determine the heirs of the said John Ned, deceased, which terminated in a decree wherein Elsie was found to be said deceased's daughter as well as his sole and only heir. Neither of these decrees of the probate court were ever appealed from, but in 1951, after Elsie Ned's death, plaintiffs in error instituted the present action in the same county court against the unknown heirs, executors, etc., of Elsie Ned, deceased, and John Ned's brother, Ernest Ned, together with the Oklahoma Tax Commission, as defendants, to quiet their title as heirs of Elsie Ned to the land originally allotted to John Ned, and theretofore devised and set over to Elsie Ned, as above described.

Plaintiffs in error and Ernest Ned, the defendant in error, will hereinafter be refered to as plaintiffs and defendant, as they appeared below.

At the trial of this cause in the county court, the parties entered into a stipulation of facts recognizing the previous two proceedings in said court, above mentioned, and agreed that the records in said proceedings could be considered a part of the record in this case. It was further stipulated that Elsie Ned died intestate and without issue, while a resident of Carter County, Oklahoma, on November 17, 1950, and that at the time of her death she was the owner of the land in controversy. It was further stipulated "that John Ned was her father, and that he acknowledged himself publicly to be her father, and that her mother was Eliza * * * Parish; that Elsie Ned was the illegitimate child of Eliza * * * Parish, and John Ned

* * *." At the close of the trial the court entered judgment for defendant upon finding that Elsie Ned was the illegitimate daughter of Eliza Parish and John Ned, and that the defendant Ernest Ned was John Ned's brother and there were no other persons related to Elsie Ned "in the same degree or any closer degree of blood." The judgment followed the court's conclusion as a matter of law that Ernest Ned is the sole and only heir of Elsie Ned, deceased, and that plaintiffs were not her heirs and, upon her death, inherited no interest in her estate.

When plaintiffs appealed from said county court judgment to the district court, they attempted, by the filing of an amended petition, to lay claim to the land in controversy as heirs of Elsie Ned, under Title 84 O.S.1951, § 216, which provides that the estate of an *unacknowledged* illegitimate child goes to his *mother* and in case of her death to *her* heirs. At the trial in the district court, the attorney for the defendant introduced in evidence, over the objection of plaintiffs' attorney, the stipulation that had been entered into in the county court trial, together with the proceedings in Causes Numbered 2051 and 3302, supra. The only witness called to testify was the defendant, Ernest Ned. At the close of the trial, the district court entered judgment affirming the previous judgment of the county court.

Plaintiffs have perfected this appeal to review the judgment of the district court, sometimes hereinafter referred to as the "trial court."

The first question we will consider is whether or not the trial court erred in admitting, over plaintiffs' objection, the stipulation of facts they had entered into with defendant in the previous county court trial of the cause, and in also admitting, over a like objection, the will probate proceedings and determination of heirship proceedings in Causes Numbered 2051 and 3302, respectively. Plaintiffs say that all of such evidence was incompetent, but they cite no authorities to support this contention. The admissibility of the fact stipulation was settled at an early date in this jurisdiction by Blankinship v. Okla-

homa City Light & Water Power Co., 4 Okl. 242, 43 P. 1088. The holding in that case has been approved and followed by this Court in the more recent case of Yamie v. Willmott, 184 Okl. 382, 88 P.2d 325. In accord with these decisions, which have never been reversed or disapproved by this Court, the district court committed no error in admitting the stipulation entered into in the county court trial between the parties to this controversy. This is true, even though the appeal to the district court was in the nature of a trial de novo, and was not necessarily restricted to the evidence introduced in the county court trial. As to the court records of the will probate proceedings, plaintiffs cannot urge their inadmissibility for we note they were the ones who offered them. It is axiomatic that he who has brought about such an error, if error it was, cannot gain advantage of it on appeal. Midland Savings & Loan Co. v. Cheves, 59 Okl. 85, 158 P. 362; Dudley v. Meggs, 54 Okl. 65, 153 P. 1121, and other cases cited in 2A Oklahoma Digest under Appeal and Error, ☞882(1); 3 Am. Jur., Appeal and Error, § 879.

The portion of the heirship determination proceedings, in Cause No. 3302, in which the court found that Elsie Ned was John Ned's daughter tends to refute plaintiffs' contention that under the presumption of legitimacy statute, title 10 O.S.1951, §§ 1–3, incl., they must be considered full brothers and sisters of Elsie Ned. The only statute cited in plaintiffs' brief that in any way appears likely to support their contention that this evidence was inadmissible is Section 3 of said Title, which provides that the presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. As the defendant, Ernest Ned, is a descendant of neither Robert nor Eliza Parish, they say this statute renders him powerless to overcome the statutory legitimacy presumption and to prove that Elsie Ned was the illegitimate daughter of John Ned rather than the legitimate daughter of Robert Parish. Under the rule governing this court's review of errors in the admission of evidence, any error in admitting the determination of heirship proceedings must be considered harmless, if, under the record before us, such evidence was merely cumulative, and Elsie Ned's illegitimacy was sufficiently established by other evidence. See cases cited in 2A Oklahoma Digest under Appeal and Error, ☞1051(1).

This brings us to plaintiffs' contention that the trial court's judgment was not justified on the basis of competent evidence. They claim there was no competent proof that John Ned was Elsie Ned's true father, or that he ever legally recognized her as such. They argue from this that John Ned would therefore not have been Elsie Ned's heir as a parent if she had died previous to him, and could not have inherited from her as such, and therefore, that John's brother, Ernest Ned, the defendant, was also not an heir of Elsie, but that under Title 84 O.S.1951, § 216, supra, Elsie's estate could only go to her mother, Eliza Parish, if living, and since she is deceased, only to plaintiffs, Eliza's heirs. We find no merit in plaintiffs' argument. Assuming that, under Title 10 O.S.1951, § 3, the defendant, Ernest Ned, not being a descendant of either Robert or Eliza Parish, could not dispute the statutory presumption of Elsie Ned's legitimacy, we find abundant evidence introduced on behalf of plaintiffs, who are direct descendants of Robert and Eliza Parish, to establish, not only that Elsie Ned was the illegitimate daughter of John Ned, but that she was recognized by him as such. We allude first to the stipulation of facts hereinbefore described as entered into at the county court trial and which we have held, under the above cited cases, was admissible as evidence at the district court trial. Although, as noted, this was introduced in the district court on behalf of the defendant, such stipulation must be considered a joint promulgation in the county court by both plaintiffs and defendant. The stipulation cannot be taken as the vehicle of a dispute solely by the defendant, who otherwise might be urged as coming within the class of persons prohibited by Section 3, supra, from disputing Elsie Ned's legitimacy. A stipulation is the opposite to a "dispute"; it is an agreement. In view of these considerations Title 10

O.S.1951, § 3, casts no reflection on the admissibility of said stipulation.

Nor does the stipulation stand alone as proof that Elsie Ned was the illegitimate daughter of John Ned and recognized by him as such. Plaintiffs themselves, through their attorney, introduced the probate proceedings of John Ned's estate (Cause No. 2051, supra), a part of which was said decedent's will, duly drawn and witnessed as provided by law, and which contains the following paragraph:

"II. All of my property, real and personal, of every kind, wheresoever situated, I give and devise to *my daughter*, Elsie Ned, absolutely and in fee simple. * * *" (Emphasis added.)

The above constituted a sufficient acknowledgment of Elsie by John Ned, under Title 84 O.S.1951, § 215, to take her estate out from under the operation of Title 84, O.S. 1951, § 216, supra. In Barber v. Barber, 198 Okl. 520, 180 P.2d 658, this Court held:

"By the provisions of 84 O.S.1941, § 215, no specific form is prescribed for acknowledgment of the paternity of a child born out of wedlock. Where the father has voluntarily executed an instrument in the presence of witnesses which purports to be a will in which he acknowledges that he is the father of said child and makes provisions for such child from his estate * * * if such will contains language which directly, unequivocally and unquestionably refers to said child as being of his blood and related to him naturally, such acknowledgment is sufficient to satisfy the requirements of the statute."

A like rule with reference to witnessed written instruments generally, was reiterated in Ridgeway v. Logan, 205 Okl. 603, 239 P.2d 778. The writing in the case of Holloway v. McCormick, 41 Okl. 1, 136 P. 1111, 50 L.R.A.,N.S., 536, cited by plaintiffs, is altogether different from the instrument in this case and the holding there is not in point. Ernest Ned's testimony also indicates that Georgia John, an Indian woman who helped care for Elsie Ned when she was a child, was instrumental in getting John Ned to make his will in Elsie's favor, but we cannot say that such testimony, as against the statements in the will, including the testator's acknowledgment before a United States Commissioner, sufficiently established that Ned's execution of the will was involuntary to render the above rule inapplicable and the trial court's judgment contrary to law and clearly against the weight of the evidence.

Plaintiffs cite certain portions of the testimony of Ernest Ned as showing a lack of affirmative proof that John Ned claimed to be the father of Elsie or ever publicly acknowledged and recognized her as his child. It is true that portions of Ernest Ned's testimony do not affirmatively establish that his brother, John, claimed to be Elsie's father and they might be said to indicate, in a negative manner, that John Ned did not make such a claim. Examples of this testimony are as follows:

"Q. Did you ever hear John Ned, in his lifetime, claim to be the father of Elsie? A. No, sir.

"Q. Did John claim that she was his girl? A. No, sir, he didn't claim her as his girl because this woman was runned all around. After when Elsie was born they only lived together short time.

* * * * * *

"Q. * * * did you ever hear John Ned say he was her father? A. No, sir."

Notwithstanding such statements, this witness, on cross-examination, admitted that at the county court trial of the case he testified that John Ned was in fact Elsie Ned's father, and we do not think that his testimony concerning John's lack of acknowledgment of this fact can be deemed any contradiction of the unequivocal proof to the contrary contained in the will.

After an examination of the evidence as a whole, we have concluded that any error the trial court may have committed in admitting evidence tending to show that Elsie Ned was the illegitimate daughter of John Ned and was recognized by him as such, was harmless in view of the abundance of

competent evidence tending to establish these facts. We have also concluded that the judgment of the trial court is neither contrary to law nor clearly against the weight of the evidence. Therefore, that judgment must be affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and O'NEAL and WILLIAMS, JJ., concur.

CORN, J., dissents.