**MAJORS et al. v. MAJORS.**

No. 35106.

Supreme Court of Oklahoma.

April 28, 1953.

Rehearing Denied July 14, 1953.

Application for Leave to File Second Petition for Rehearing Denied Sept. 22, 1953.

Champion & Champion, Ardmore, for plaintiffs in error.

George & George, Ardmore, for defendant in error.

HALLEY, Chief Justice.

Margaret Majors filed this action against L. O. Majors, an incompetent, and Pat Bennett and Wallace J. Majors, guardians of L. O. Majors, an incompetent, seeking specific performance of an alleged oral agreement with L. O. Majors whereby he agreed to convey or will to her a one-third interest in all his real and personal property in consideration of personal services to be rendered by her to him. Parties will be referred to as they appeared in the trial court or by name.

Plaintiff alleged that in 1922 she married Wallace Majors, the only child of L. O. Majors, and that she and her mother, Mrs. Etta Dennis, had resided in the home of L. O. Majors for some ten years previous to her marriage. Prior to the filing of her suit, the mother of Margaret Majors had filed a similar suit seeking specific performance of a like oral contract between her and L. O. Majors and praying for a judgment giving her a one-third interest in all his property.

It was further alleged that Wallace Majors, husband of plaintiff, had acquired the habit of strong drink and was not dependable as a business man and was unable to assist his father in carrying on his business affairs; that due to the fact that he could not depend upon his son, Wallace, L. O. Majors, suggested that Margaret Majors assist him in the prosecution of his various business enterprises and stay with him continually, and that for such services she would become his partner and share with him in his properties to the extent of a one-third interest.

It was further alleged that L. O. Majors had a general store, cotton gin, and lands in and around the Town of Pooleville, in Carter County, Oklahoma, and that he also acquired various mineral interests and ranching lands; that relying upon such verbal agreement, Margaret Majors lived with Wallace Majors until his death in 1948 and assisted L. O. Majors in the management and operation of his various business enterprises; that she often performed the work of a man on the farm and ranch, and looked after live stock.

She alleged that in 1930 L. O. Majors was adjudged insane and committed to the Central State Hospital at Norman where he remained for about one year during which time plaintiff looked after his store, the post office, and helped in his farming operations; that upon his return to his home as a sick man she looked after him for three or four months while he was recovering his health. Her mother was living in the home of L. O. Majors, and assisted in these services.

That in May, 1948, L. O. Majors became mentally sick again and was adjudged insane for the second time and committed to the hospital at Norman where he is still confined.

Plaintiff alleged that she had fully performed all of her duties to L. O. Majors under their agreement and prayed for judgment awarding her a one-third interest in all of his properties. In an amendment to her petition, she alleged that the partnership mentioned in her petition was a special partnership between the two of them until dissolved by the insanity of L. O. Majors and his commission to the hospital.

The guardians of L. O. Majors denied the allegation of plaintiff's petition and filed an amended answer in which they alleged that prior to 1912 L. O. Majors and his wife had acquired considerable property; that in 1912 his wife died, and at that time Etta Dennis was operating a hotel or boarding house in a building owned by L. O. Majors and near his home; that Mrs. Dennis had four children, including the plaintiff herein, but no property; that Mrs. Dennis proposed to L. O. Majors that she and her children

would keep house for him if he would furnish them with a home and the necessities of life and that L. O. Majors permitted Mrs. Dennis and her children to move into his home, and that she and her children performed household duties for him and his son, and that he provided a home for Mrs. Dennis and her children and with all of the necessities of life, including help in the education of plaintiff.

In 1916, Wallace Majors married. Three children were born to this marriage, two of whom are living. This marriage was dissolved by divorce in January, 1922, and the custody of the children awarded the widow, who later moved to California. During 1922, Wallace Majors married Margaret Majors, the plaintiff herein. They continued to live on the property of L. O. Majors. He continued to bestow his bounty upon his only son. He bought 170 acres of land and put the title in the name of his son. He deposited large sums of money to his son's credit and furnished him money for several business enterprises, which were generally failures. L. O. Majors neither sought the advice of nor had the slightest assistance from Margaret Majors in conducting his business affairs. The services rendered by her and her mother were largely domestic, and for which they had been compensated.

The defendants further alleged that when Wallace Majors died in 1948 he left an estate in his name of approximately $40,000, his heirs being his two children by his first wife, and his surviving widow, the plaintiff herein, who was the administratrix of his estate which was distributed one-third to each heir.

It was further alleged that L. O. Majors was not entirely lacking in understanding and pleaded that if the agreement claimed by plaintiff was made, it was in violation of the statute of frauds and that L. O. Majors never agreed that plaintiff help him in his business affairs. By reply plaintiff alleged that after L. O. Majors' first confinement in the hospital he came home and they renewed their former agreement.

At the conclusion of the evidence, the defendants moved for an instructed verdict in this case and in that of Mrs. Dennis, and both motions were overruled. The jury found against Etta Dennis, but in favor of Margaret Majors. The court rendered judgment in accordance with the findings of the jury which served only in an advisory capacity, this being a case of equitable cognizance. Mid-Continent Life Ins. Co. v. Sharrock, 162 Okl. 127, 20 P.2d 154. While in cases of equitable cognizance the judge may submit questions of fact to a jury, it is not only his right but his duty to finally determine all questions of fact as well as law. Wat-tah-noh-zhe v. Moore, 36 Okl. 631, 129 P. 877.

The first proposition submitted by defendants is that the findings and judgment of the trial court are not sustained by the evidence but are clearly against the weight of the evidence and are not sustained by the applicable law. This requires a review and weighing of the evidence. The evidence is voluminous and not easily summarized within a limited space. However, the testimony of plaintiff is the only evidence supporting directly her claim of an oral agreement with L. O. Majors that she have a one-third interest in all his property She testified that the agreement was made shortly after she married his son in 1922, and that after his first trip to the hospital in 1930 the agreement was renewed and talked over by them many times. She testified that she and her mother and the other children had a good home, and that Wallace Majors had all the money he needed and that his bank account ran as high as $12,000 and that she had the privilege of writing checks against it; that she assisted L. O. Majors about his store and post office and was postmistress at one time at $15.00 per month. The following testimony is a fair example of her evidence relative to assisting L. O. Majors in the conduct of his business.

"Q. Now then, as I understood you, you started to say a moment ago, you didn't have anything to do with his business and property? A. I didn't have anything to do with his leases. He was a man that tended to his own business.

"Q. When he went out and bought some property, some land which he did, did he consult you about that? A. No, he did not.

"Q. You know, as a matter of fact, I think don't you, Margaret, that he loaned a lot of people money in large sums, his friends? A. Yes.

"Q. Did he consult you about that? A. Why, no.

"Q. Margaret, did he consult your mother or anybody about his business or property? A. He consulted—he didn't consult anybody, and he didn't talk his business but with a few—very few people.

"Q. He carried on his business in the way he wanted to? A. He did most everything in the way he wanted to (R. 201–202). It was his property but we were to have a share in it, it was to be part ours. He had promised us part of the property, but he would still loan money out. He bought farm lands and government bonds. All of the bonds that he bought were in his name and in his son's name. He never bought any government bonds in my name or in my mother's name, yet all during this time my mother and I were claiming ⅓rd interest each in everything he had. Mr. Majors was loaning money, buying bonds and making investments, and of course, we didn't have anything to say about that, nor did we object to it.

"Q. Margaret, did you ever tell your husband, Wallace, about this arrangement you had with Mr. Oscar Majors, his father? A. No, sir, it was confidential between Mr. Oscar Majors and I.

"Q. Why didn't you tell your husband about this agreement with Mr. Oscar Majors, that you were to have a third of that property, of all his property? A. Why I just wasn't supposed to tell.

"Q. Why? A. Because we had a lot of talks, Mr. Oscar and I.

"Q. Margaret, you didn't want Wallace to know about it? A. If he wanted to tell Wallace about it, I felt like it was his business.

"Q. You didn't want Wallace to know about it, did you? A. No, I don't know that I didn't want Wallace to know."

The other witnesses called by the plaintiff testified that they knew nothing about the alleged agreement. None of them had ever heard a word of, or even concerning such an agreement. They all said that L. O. Majors was a man who consulted no one about his business affairs. They saw nothing that indicated the existence of such an agreement with the plaintiff. No witness testified to anything to indicate that plaintiff's husband, Wallace Majors, knew of such an agreement. The oral agreement alleged rests solely on the testimony of the plaintiff.

The court permitted L. O. Majors to be called as a witness. Dr. Griffin, superintendent of the Central State Hospital, testified that L. O. Majors had lucid intervals and knew what he was talking about as a witness. Dr. Griffin qualified as an expert on mental questions. L. O. Majors flatly denied that he ever made such an agreement. Margaret Majors admitted that she had never told of the agreement to any one and that she was never consulted by L. O. Majors about a single business transaction during all of the years she claimed the agreement existed. She abandoned the allegation of partnership and admitted that she had had no part in any transaction of L. O. Majors by which he acquired any of his property. She did assist her mother in her house work and in boarding the employees of L. O. Majors and at times worked in the store and on the farm where she was living with her husband. The testimony of Margaret Majors in regard to the agreement she claimed is greatly weakened by certain admitted facts. She admitted that she had never told her husband of the agreement, and never produced a single witness who ever heard of it or who knew of any facts or circumstances indicating that it existed. Neither did L. O. Majors ever mention it or do anything indicating that it existed. No witness testified that

he ever heard the agreement discussed by either party or by any of their relatives and friends.

When Wallace Majors died, L. O. Majors secured a transfer of his son's bank account to his own name. He secured the execution of conveyances of lands standing in Wallace Majors' name to himself. He took Margaret Majors and his two grandchildren to the office of his attorney and secured the conveyances to himself. These transfers were later rendered ineffective by the administration of Wallace Majors' estate, resulting in the distribution of the property standing in his name to Margaret Majors and the two children of Wallace Majors by his first wife. The record disclosed that Margaret Majors received approximately $15,000; that she owned 80 acres of land and a small herd of cattle which she had continued to maintain on the land of L. O. Majors. The above action of L. O. Majors seems to indicate that he felt no obligation towards Margaret Majors for services rendered up to 1948. In fact, L. O. Majors is not shown to have made any statement or to have taken any action indicating that he had agreed to share his estate with his son's widow.

In all of the years during which Margaret Majors claimed the agreement between her and L. O. Majors existed, she is not shown to have made the slightest effort to have it executed or put in writing. The alleged agreement appears to have rested in her mind alone for more than twenty-five years. During all these years, she never mentioned the agreement to any one or suggested to L. O. Majors that he make a will or put in writing some evidence of her alleged right.

There is not one word of evidence which placed any limitation upon the term of the services she said she agreed to render and did render. From her own words we must conclude that if L. O. Majors made any such agreement it must have been the understanding and intent of the parties that Margaret Majors stay with him and help him as long as he lived. No other term can be reasonably inferred.

L. O. Majors is over 80 years of age. He was known to have periods when he was not himself mentally. Dr. Griffin testified that his complete recovery is unlikely. He may live for many years. He was permitted to go from Norman to Ardmore and to testify in this case. He might recover to the extent that he could spend some time at his home. The question naturally arises as to whether Margaret Majors has fully performed her part of the agreement.

In his declining years L. O. Majors has lost his only son and is now beset with law suits by his housekeeper and daughter-in-law for two-thirds of all he has accumulated and charged with the failure to carry out the terms of an alleged contract made more than twenty-five years ago, and allegedly affirmed many times through the years.

During all of the time when Margaret Majors claims to have rendered services to L. O. Majors she and her husband lived in the same house with him and her mother who continually served as his housekeeper. The evidence shows that for less than one year Margaret Majors worked steadily in the store while L. O. Majors was in the hospital the first time. She admits she was never consulted about any business transactions. When she helped in the field and with the cattle, she was the wife of Wallace Majors, and admitted that L. O. Majors was very generous in supplying them with a home and whatever they needed. She shared that generosity with her husband and could draw checks against his bank account which was generously enriched by deposits made by L. O. Majors. The evidence offered to establish the alleged oral agreement consists of the testimony of the plaintiff alone. It is not corroborated by the various facts and circumstances surrounding the parties. It fails to meet the required test of being so clear, cogent, and forcible as to leave no reasonable doubt as to its terms and character. In Webster

v. Neal, 119 Okl. 93, 248 P. 596, 597, it was said:

"A decree for specific performance will not be granted unless the evidence of the making of the contract is clear and convincing, and unless its terms, the consideration on which it was founded, and the time of its execution, are clearly established."

In Pancoast v. Eldridge, 134 Okl. 247, 273 P. 255, 256, it was said:

"Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character. * * *"

 Defendants contend that the alleged oral contract to convey land in consideration of services rendered is in violation of the statute of frauds. They rely upon the case of Hall v. Haer, 160 Okl. 118, 16 P.2d 83, where it held that mere performance of services under a parol agreement is not alone sufficient to take the agreement out of the statutes of frauds, but that the services must be of such exceptional character as to render it impossible to estimate their value by any pecuniary standard. We think that the character of the services rendered by Margaret Majors was such that their value could have been calculated with reasonable certainty. We do not think that Margaret Majors fully performed her part of the alleged oral agreement. It is entirely possible that L. O. Majors may live for a number of years and there would be periods during which he could enjoy the care and devotion of his daughter-in-law. Instead of her care he is harried in his last years by law suits and claims that are bound to burden his mind and embitter his thoughts. There was not such complete performance on the part of Margaret Majors as would entitle her to enforce specific performance. In Messick v. Johnson, 167 Okl. 463, 30 P.2d 176, we said in the first syllabus:

"It is a general rule of law that a contract must be performed according to the terms of the agreement before a party can have any right of action."

Pasley v. De Weese, 183 Okl. 424, 82 P. 2d 1066, holds that, where no possession of realty was taken under an oral contract to devise realty, and where consideration for the contract was labor and service of such a character as to be capable of an approximately accurate estimate so that their value could be liquidated in money and promises could be made substantially whole, specific peformance of contract would not be decreed. In the case at bar the plaintiffs claim is clearly within the statute of frauds as it was not to be performed within a year from its alleged making and it would have also required the conveyance of an interest in real estate.

██ It seems to be well settled that where the performance of personal services by plaintiff is a condition precedent plaintiff will be denied specific performance unless said services have been performed. 58 C.J. Specific Performance § 330; Roy v. Pos, 183 Cal. 359, 191 P. 542.

██ We find it unnecessary to discuss other issues submitted since after a thorough study of the record and weighing of the evidence we have concluded that the findings and judgment of the court are clearly against the weight of the evidence and must be reversed. Thompson v. Teel, 204 Okl. 105, 227 P.2d 395.

The judgment is reversed with directions to enter judgment for the defendants.

JOHNSON, V. C. J., and DAVISON, BLACKBIRD and WILLIAMS, JJ., concur.

WELCH, CORN, ARNOLD and O'NEAL, JJ., dissent.