Marland C. JOHNSON, Administrator of the Estate of Frank E. Sharp, Deceased; Thomas Sharp, Ernest Sharp, Frances Newbrey, Carl Sharp, Howard H. Sharp, Glenn Emmett Sharp, Janie Thomas, Harold A. Sharp, Ida Johnson, and the unknown Heirs, Executors, Administrators, Devisees, Trustees, and Assigns of Frank E. Sharp, Deceased, Plaintiffs in Error,

v.

Leo HAZALEUS, Jr., Defendant in Error.

No. 38218.

Supreme Court of Oklahoma.

April 14, 1959.

Duffy & Johnson, by J. Paul Johnson, Ponca City, for plaintiffs in error.

Ross & Ross, I. D. Ross, David Ross, Newkirk, for defendant in error.

PER CURIAM.

For many years Frank E. Sharp and his wife, Grace Sharp, lived on a 60 acre farm located near Newkirk, Kay County, Oklahoma. They had no children. The record title to the land was in the name of Frank E. Sharp. Mrs. Sharp died in July, 1945. Mr. Sharp continued to live on the farm. On October 5, 1956 he was found dead, apparently from a self inflicted gun shot wound.

Among the papers found after his death was an instrument written in whole and signed by Frank E. Sharp, purporting to leave the 60 acre farm and shares of stock in the Farmers Co-op to Leo Hazaleus, Jr., a son of a neighbor, and his bonds and money remaining to Thomas L. Sharp, of Sabina, Ohio, a nephew.

Leo Hazaleus, Jr. filed in the county court of Kay county, petition to probate such instrument as the holographic will of Frank E. Sharp, deceased. On the 6th day of November, 1956, probate thereof was denied for the reason it was not dated and could not qualify as a holographic will, in that it does not meet the requirement of 84 O.S.1951 § 54.

Thereafter Leo Hazaleus, Jr. filed this action in the District Court of Kay County against the sole and only heirs at law of said Frank E. Sharp; Thomas Sharp, Ernest Sharp, Frances Newbrey, Carl Sharp, Howard H. Sharp, Glenn Emmett Sharp, Janie Thomas, Harold A. Sharp, nephews and nieces, and Ida Johnson who by warranty deed had acquired whatever interest Carl Sharp, a nephew had, and the unknown heirs, executors, administrators, trustees and assigns of said decedent and Marland C. Johnson, administrator of the estate of said decedent seeking specific performance of the contract to will said 60 acres to the plaintiff and require such administrator to do all things necessary to distribute the land to him.

The trial resulted in a judgment for the plaintiff. The defendants have duly perfected an appeal to this court.

It is first contended that acts done prior to the making of a contract or which are auxiliary or preparatory thereto cannot be regarded as part of the consideration therefor and that the trial court erred in permitting the plaintiff to so plead, and in receiving evidence thereon.

■ A past consideration, if it imposed no legal obligation at the time it was furnished, will not support a promise. See Kennedy v. Marshall, 195 Okl. 617, 160 P. 2d 397; Eatmon v. Penland, 119 Okl. 180, 249 P. 387.

■ However, a contract founded partly on past consideration and partly on future consideration, such as continued care and assistance, is enforceable. Kahn v. Lischner, 128 Cal.App.2d 480, 275 P.2d 539. Title 15 O.S.1951 § 110.

Turning to the record in the case at bar, it discloses as follows: Leo Hazaleus, his wife Alfretta, and family lived on, and owned the quarter section immediately adjacent to and south of the Sharp land. Mrs. Sharp was in poor health for many years. She had tuberculosis. From and after 1930 she had several extended illnesses. Her last illness was in 1944 and 1945. She was removed to a hospital where she passed away in July, 1945.

During all these illnesses Mrs. Hazaleus helped to care for Mrs. Sharp, bringing food, cleaning house and doing other things in connection therewith.

At Mr. Sharp's request Mrs. Hazaleus made the hospital arrangements, riding in with Mrs. Sharp. After her death, again on Mr. Sharp's request, Mrs. Hazaleus made all the funeral arrangements.

During a portion of the time prior to the death of Mrs. Sharp and thereafter up to the death of Mr. Sharp in 1956, the Hazaleus family farmed the 60 acres on a share crop basis. The Hazaleus family continued to do things for, and watch after Mr. Sharp after Mrs. Sharp's death. They checked with him every few days, drove him to town to get groceries. He had no phone. If he needed help he hung out a white shirt which could be seen from the Hazaleus home, and some of that family would drive over to care for his needs.

The Hazaleus were not paid for any part of their services to either Mr. or Mrs. Sharp. In view of the fact that the Sharp's had indicated they would be compensated, in January, 1951 Mr. and Mrs. Hazaleus went to see Mr. Sharp and suggested to him that they would buy the 60 acres. Mr. Sharp advised them that they had done more for him and his wife than he could ever repay, and that he would leave by will the 60 acres to them or to the member of their family they designated. They suggested that the 60 acres be left to their son, Leo Hazaleus, Jr., since he was young and would continue to care for Mr. Sharp, should they pass away or become incapacitated. This Mr. Sharp agreed to do.

348

On the return of Leo Hazaleus, Jr. from the army he took over the farming of the 60 acres. He assisted in the care of Mr. Sharp, and he was advised of the agreement with Mr. Sharp.

■ The record discloses a continuing performance on the part of the Hazaleus family as to the care and assistance to the Sharps, commencing long prior to such agreement, and continuing subsequent thereto, terminating only with the death of Mr. Sharp. Even then the Hazaleus family arranged for the final rites and burial of Mr. Sharp. Thus it is clear that the Hazaleus family fully performed their part of the agreement. The court properly permitted the pleading to show, and the evidence to cover the continuing performance, the portion rendered subsequent to the agreement being ample consideration to support the same.

It is next contended that by virtue of 12 O.S.1951 § 384, commonly referred to as the Dead Man's Statute, the trial court erroneously permitted the plaintiff to testify that he knew of the agreement between his father and mother and Mr. Sharp wherein it was agreed that they, along with him, would care for Mr. Sharp for the rest of his days, and in consideration for such service Mr. Sharp would leave the farm to the plaintiff.

■ Under said section 384 a party to a civil action against the heirs at law or the administrator of the estate is incompetent to testify in his own behalf, to facts which will raise a contract between such party and the decedent. This extends to testimony that would tend to indirectly prove such a transaction. Mitchell v. Koch, 193 Okl. 342, 143 P.2d 811; Strickland v. Howard, 208 Okl. 73, 253 P.2d 158.

■ We see no reason for further comment on the so-called "Dead Man's Statute" because an examination of the record reveals that there was other evidence sufficient to establish the alleged contract and the admission of the testimony, even though it may have been inadmissible, was harm-

less. Ridgeway v. Logan, 205 Okl. 603, 239 P.2d 778.

■ In considering the enforcement of oral contracts to devise property we have many times held that the proof thereof must be so cogent, clear and forcible as to leave no reasonable doubt as to its terms and character. Robinson v. Haynes, 147 Okl. 95, 294 P. 803; Pancoast v. Eldridge, 134 Okl. 247, 273 P. 255; Clemons v. Clemons, 193 Okl. 412, 145 P.2d 928; Holt v. Alexander, 207 Okl. 140, 248 P.2d 228; Majors v. Majors, Okl., 263 P.2d 1012; Loflin v. Capps, Okl., 327 P.2d 443. The complete performance on the part of the one seeking to avail himself of the benefits of the oral contract takes the case out of the statute of frauds. Eggstaff v. Phelps, 99 Okl. 54, 226 P. 82.

■ In addition we have held in such case, however, that if the labor and service was of such a character as to be capable of an approximate accurate estimate, so that the value thereof could be liquidated in money and the promisee could thereby be made substantially whole, specific performance of the contract would not be decreed. Pasley v. De Weese, 183 Okl. 424, 82 P.2d 1066; Majors v. Majors, supra.

■ Although in conflict in some respects the records clearly indicate and disclose the services rendered to Mr. and Mrs. Sharp by the Hazaleus family. The Hazaleus family was in no way related to the Sharps. There is no presumption that such services were rendered gratuitously. See Juckes v. Rogers, 206 Okl. 663, 246 P.2d 335.

The evidence of Alfretta Hazaleus, though objected to, is unrefuted that she and Mr. Hazaleus entered into the agreement with Mr. Sharp that in consideration of the continued care of, and assistance to Mr. Sharp for the duration of his life by the Hazaleus family, Mr. Sharp would, by will, leave the 60 acres of land to Leo Hazaleus, Jr. Though the evidence is in conflict in some respects the weight thereof indicates that the Hazaleus family com-

pletely performed their portion of the agreement.

In addition we have in evidence an instrument admittedly in the handwriting of, and signed by the decedent, Mr. Sharp, which attempted to devise the farm to Leo Hazaleus, Jr. and perform his part of the contract. Here we have the substantiating evidence by the decedent himself. Such instrument, not being dated, could not be admitted to probate as a will, yet it does lend certainty and definiteness to the contract and takes the terms thereof out of the realm of the speculative.

Though there may be some inconsistency in the evidence, the weight thereof discloses the oral contract sued upon, the performance of their portion thereof by the Hazaleus family, and the attempt of Mr. Sharp to carry out his portion thereof. In his apparent preparation for passing on a few days before his death he burned personal papers and pictures, but obviously kept the instrument in question and a few other papers.

■ The services were completely performed. They covered a span of many years and were such as to make it impossible to approximate the value thereof so that the Hazaleus family could be made whole by the payment of money. The Hazaleus family had no obligation to assist or care for Mr. and Mrs. Sharp in their lifetime. The clear weight of the evidence established the oral contract, the full performance by one and an attempted full performance by the other, warranting specific performance against the decedent's personal representative. Robinson v. Haynes, supra.

■ This is an action for the specific performance of an oral contract to devise land and is equitable in nature, and it was not necessary to present a claim to the administrator of the estate of deceased under 58 O.S.1951 §§ 333 and 341, prior to the filing of this action. See O'Neill v. Lauderdale, 80 Okl. 170, 195 P. 121; Ferrell v. McVey, 71 Idaho 339, 232 P.2d 134; Walker v. Calloway, 99 Cal.App.2d 675, 222 P. 2d 455; McLeod v. Palmer, 189 Okl. 466, 117 P.2d 770; Brooks v. Yarbrough, 10 Cir., 37 F.2d 527.

The case of Becker v. State ex rel. Department of Public Welfare, Okl., 312 P. 2d 935, cited and relied upon by defendant, and the cases quoted therein, set forth a correct statement of the law, however, under the record here it has no application. This is an action equitable in nature and under the above cited authorities it was not necessary to present a claim to the administrator.

Lastly it is contended that Mr. and Mrs. Hazaleus were real parties in interest, they having entered into the oral contract with the decedent, and the failure of the trial court to require them to be joined as party plaintiff was error.

Although a rather extensive argument is presented, no authority for their contention is cited.

■ However that may be, we have held that a third party beneficiary of a contract to make a will may bring an action for the enforcement thereof. Eggstaff v. Phelps, supra; Tucker v. Zachary, Okl., 269 P.2d 773.

We conclude that the judgment of the trial court is sustained by the weight of the evidence.

Judgment affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ. concur.