**INTERCON MANUFACTURING, INC., Appellee,**

**v.**

**The CENTRIFUGAL CASTING MACHINE COMPANY, INC., Appellant.**

**Nos. 78777, 79866 and 80134.**

Court of Appeals of Oklahoma, Division No. 1.

Aug. 17, 1993.

**4.** *Childs*, 848 P.2d at 576.

**5.** *Childs*, 848 P.2d at 576–578.

Richard T. Garren, Tulsa, for appellee.

Terry L. Weber, H. Gregory Maddux, Tulsa, for appellant.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

Appellant, Centrifugal Casting Machine Company, Inc., (CCM), seeks review of three orders of the trial court in this contract action. Appellee, Intercon Manufacturing, Inc., (Intercon), brought this action against CCM to recover the balance due on a construction contract which required Intercon to manufacture and supply a cement lining system to CCM. The trial court rendered partial summary judgment in favor of Intercon for the balance due on the contract. After a non-jury trial, the trial court rendered judgment in favor of Intercon on its action to recover certain interest from CCM, but denied Intercon's claim of fraud. In the third order appealed from, CCM seeks review of the trial court's order which granted Intercon's request for attorney fees and prejudgment and postjudgment interest.

Sometime prior to June 14, 1989, the date of the contract between the parties, CCM entered into a contract with representatives from China for the sale of equipment used to manufacture water pipe. This equipment consisted of various components which were subcontracted by CCM to various subcontractors. One component was the lining system which is the subject of the contract between the parties. It is undisputed that the requirements of the contract between the parties and the contract between CCM and the Chinese are independent of each other.

The schedule incorporated into the contract between CCM and Intercon provided February 15, 1990, as the date the system would be delivered for export. However, the entire project between CCM and the Chinese was put on hold after political events in China threatened financing of the deal. On July 17, 1990, CCM sent a letter to Intercon requesting it to issue a "Stop Work Order" and to stop all work on the system until CCM's financing with the Chinese was worked out. Intercon complied by shutting down production and laying off employees. By July 31, 1990, the equipment Intercon was to supply to CCM was 96% complete. In November, 1990, CCM had successfully renegotiated a letter of credit with the Chinese and the project was resumed. The

water pipe system was exported to China March 9, 1991.

The contract between the parties provided for the manufacture, testing, and training of personnel for a complete cement lining system. The contract details technical specifications of the system and requires Intercon to supply certain training and testing. Paragraph 3 of the contract provides:

Intercon will provide facilities, equipment, staff and instruction for up to twenty people in the use and maintenance of this equipment. It will be the responsibility of the buyer to provide translation to and from English, and the pace of instruction will be constructed to permit translation and questions. The nature and tone of the school will be especially suited to the Chinese, and will assume some technical background on the part of the students. Intercon will provide basic refreshments and supply tea making equipment for the convenience and comfort of the participants.

The contract further sets forth the requirements of classroom instruction and specific areas in which hands-on training should be provided. The contract also contains a provision which requires Intercon to provide on-site technical advisors in China. That provision is as follows:

Intercon will provide technical advisors on-site, when required, to assist in the set up, tuning and operation of this equipment. Air and surface transportation, western-style hotel accommodations and food, and other direct expenses will be the responsibility of CCMCO. Fees for this service are $300 per man per day and will be assessed for each full day out of Tulsa.

Finally, the contract provides:

8.1 Equipment and facilities will be available for testing and training within the schedule provided by the Buyer. The schedule provided becomes a part of this purchase order contract.

8.1.1 Inspection will take place within 15 days of sellers notification of readiness.

8.2 Training will take place approximately 15 days after notification of buyers readiness. Training will be available for 30 days.

■ The contract price was $344,636.26 and was payable 75% "upon completion and inspection of the equipment" by CCM and 25% "upon completion of personnel training". CCM admits it has not paid Intercon $43,080.00 under the contract. It maintains this balance is not due under the contract because Intercon has not yet completed the training requirements of the contract. Specifically, CCM argues Intercon failed to supply the "hands-on" training, required by paragraph 3, to a second group of Chinese representatives and that such failure authorizes it to withhold the balance.

The schedule attached to the contract slated January 15, 1990 for testing and training. Two groups of Chinese came to the United States for training in February, 1991, and May, 1991. The parties agree the first group received all the required training from Intercon at the Intercon facility under the terms of the contract. However, CCM maintains the second group did not receive the hands-on training portion as required by the contract and that Intercon should be required to travel to China to complete the hands-on training. Hands-on training was impossible in the U.S. when the second group came in May of 1991 because the system had been shipped to China in March, 1991.

The depositions and affidavits attached to the summary judgment pleadings clearly show the target dates in the initial schedule were not met. The evidence suggests the parties had reached an alternate agreement regarding the training requirements of the contract. It is the substance of this alternate agreement that is in dispute. Because of the delays caused by the upheaval in China and CCM's requirement the lining system be shipped on a particular boat before their letter of credit expired, Intercon submits it agreed to fully train the first group from China even though some evidence suggests that group was not the group intended to receive the training. When the second group arrived, Intercon conducted training which did not include some of the hands-on training required by the contract.[1] Whether the par-

1. Although not considered by the trial court on the summary judgment motion, during the non-

ties had agreed Intercon was required to give this second group hands-on training, either in the U.S. or in China, or whether the parties had agreed to waive hands-on training for the second group, is a question of fact which must be determined by the trier of fact.[2]

■■ Summary judgment is a procedural device used to reach a final judgment where there is no dispute as to any material facts. *Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 792 P.2d 50, 55 (Okla.1990). All inferences in the evidence must be taken in favor of the party opposing the motion. *Id.* Summary judgment is improper if under the evidence, reasonable people could reach different conclusions from the facts. *Id.* Our review of the evidence indicates reasonable people could reach different conclusions from the evidence presented. A question of fact remains whether the alternate agreement required hands-on training for the second group, and if so, whether the training has been completed. The order of the trial court granting summary judgment is therefore reversed and this issue is remanded to the trial court for proceedings consistent with this opinion.

■■ Appellants next maintain the trial court's judgment awarding Intercon interest based on modification of the written contract by an executed oral agreement, is not supported by the evidence. Specifically, CCM maintains there is no evidence an oral agreement to pay interest was reached, that the agreement was not supported by consideration, and the agreement was not fully executed. In a common-law case where a jury trial is waived, the trial judge's determination of the facts has the same force and effect as a verdict rendered by a well-instructed jury. *Bradley v. Clark,* 804 P.2d 425, 427 (Okla.1990). This determination must be affirmed if supported by any competent evidence. *Id.*

■■ The four elements necessary to have a binding contract are competent parties, consent, a legal object and consideration. *Langdon v. Saga Corporation,* 569 P.2d 524 (Okla.App.1976); 15 O.S.1991, §§ 2, 51. The evidence clearly shows an offer in February, 1991, from McKee, the President of CCM, to pay interest to Intercon which had accrued on bank notes on Intercon's equipment and inventory on the system. There is also competent evidence the offer was accepted. The interest was to compensate Intercon for the delays caused by the renegotiations in 1990 between CCM and the Chinese on the letter of credit for the project. McKee testified CCM never made any interest payments because the invoices for interest which Intercon submitted covered more than just interest on the inventory. The offer was made by McKee when Butler approached him about renegotiating the contract in February, 1991, during the final tests of the equipment. Butler informed McKee that Intercon's profits on the system had been swallowed up by the delay and at that point, McKee offered to pay Intercon's interest on the inventory notes during the delay period.

■■ To be enforceable, a contract must be supported by valid consideration. *Powers Restaurants, Inc. v. Garrison,* 465 P.2d 761 (Okla.1970); 15 O.S.1991, § 2. In Oklahoma, 15 O.S.1991, § 106 defines consideration as follows:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The burden of showing a want of consideration lies with the party seeking to invalidate or avoid it. 15 O.S.1991, § 115.

---

jury trial Intercon introduced a letter dated March 19, 1991, from Intercon to CCM which shows Intercon contemplated training some individuals after the system had been shipped to China when the individuals could schedule a visit to the Intercon facility.

2. CCM seems to suggest Intercon should be required to travel to China to train the second group because of the clause in the contract which provides for on-site technical support. They have not shown, however, how this clause covers the hands-on training.

On appeal, CCM maintains McKee's promise to pay Intercon's interest is not supported by consideration. Intercon maintains the consideration is the detriment it suffered because of CCM's delays, which caused it to layoff workers, shut down the plant, and incur more interest expense than if the original schedule for delivery had been met. First, consideration is defined as a detriment suffered by the *promisor*, not the promisee. Second, Intercon's offer to pay interest was made *after* the delays in 1991, and within three weeks of the delivery of the equipment. The offer to pay interest was not made at the time the parties modified the original contract schedule or when CCM requested Intercon to delay production. The delays which Intercon suffered under the lining system contract are not sufficient consideration to support Intercon's later offer to pay interest.

■ A past consideration, if it imposed no legal obligation at the time it was furnished, will not support a promise. *Johnson v. Hazaleus,* 338 P.2d 345 (Okla.1959). In *Kennedy v. Marshall,* 195 Okla. 617, 160 P.2d 397 (1945), the Supreme Court of Oklahoma further explained the rule that a promise made on no other than past consideration is unenforceable.

"By the great weight of authority a past consideration, if it imposed no legal obligation at the time it was furnished, will support no promise whatever; or, as the rule has been stated otherwise, an executed consideration is no consideration for any promise other than that which the law would imply. A past consideration, it is said, is some act or forbearance in time past by which a man has benefitted without thereby incurring any legal liability; if afterward, whether from good feeling or from interested motives, he makes a promise, to the person by whose act or forbearance he has benefitted, and that promise is made on no other consideration than the past benefit, it is gratuitous and cannot be enforced; it is based on motive and not on consideration."

*Kennedy,* 160 P.2d at 398–399, quoting 17 C.J.S. Contracts, § 116 (1963).

Intercon contends its forbearance in enforcing the initial contract delivery date of the equipment is valid consideration to support CCM's offer to pay the interest. Any forbearance by Intercon with regard to the initial schedule occurred prior to CCM's offer to pay interest. Consideration is something done, forborne or suffered or promised to be done, forborne or suffered *at the time of consent to the contract.* Nor has Intercon demonstrated through competent evidence there was consideration in the form of a benefit to the promisor, CCM. Accordingly, we hold the trial court erred in awarding Intercon judgment on the agreement to pay interest as the record is void of any competent evidence showing such agreement was supported by consideration. The May 14, 1992, judgment of the trial court is therefore reversed insofar as it awards judgment to Intercon for $28,349.00 for interest. The judgment is affirmed, however, insofar as it denies Intercon's action for fraud.

Finally, CCM challenges the trial court's order which awarded Intercon attorney fees and prejudgment and postjudgment interest on the November 15, 1991, judgment and postjudgment interest on the May 14, 1992, judgment. CCM does not dispute the amount of the awards but maintains the award is not authorized under 12 O.S.1991, § 936 because the debt involved in this action is not an "open account" or a "sale of goods". The order of the trial court does not specify which provision it relied upon under 12 O.S. 1991, § 936. Because we are reversing the judgments appealed from and the trial court's order awarding attorney fees and interest, it is unnecessary to determine what theory the trial court relied upon in awarding such fees and interest. The June 22, 1992, order awarding Intercon attorney fees and interest is hereby reversed.

The judgment of the trial court is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

JONES, P.J., and ADAMS, J., concur.